```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   07/31/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JESUS BRITO,

                         Plaintiff,

                -against-

LUCKY SEVEN RESTAURANT & BAR LLC D/B/A
LUCKY 7 TAPAS BAR, LA CASA DEL MOFONGO
INC., FELIX CABRERA, AVI DISHI, AND JOHN
DOES #1-10,

                      Defendants.

-----------------------------------------------------------------X

**REPORT &**
**RECOMMENDATION**

19-cv-03876 (PAE) (KHP)

TO:      **THE HONORABLE PAUL A. ENGELMAYER, United States District Judge**
FROM:  **KATHARINE H. PARKER, United States Magistrate Judge**

      On May 1, 2019, Plaintiff Jesus Brito brought this action alleging that Defendants

violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law

("NYLL"), N.Y. Lab. Law §§ 650 *et seq.*, and supporting New York State Department of Labor

Regulations. (Compl. ¶¶ 1-2, ECF No. 1.) The Defendants in this case are Lucky Seven

Restaurant & Bar LLC (d/b/a Lucky 7 Tapas Bar) ("Lucky Seven"), La Casa del Mofongo Inc.

("Mofongo"), Felix Cabrera, Avi Dishi, and other owners, officers, directors, members, and/or

managing agents of Lucky Seven and Mofongo ("John Does #1-10"). (*Id.* ¶¶ 4-15.)

      In his complaint, Plaintiff asserts four claims. (Compl. ¶¶ 41-60.) First, Plaintiff claims

that Defendants violated the overtime provisions of the FLSA, 29 U.S.C. §§ 201 *et seq.*, by failing

to pay Plaintiff overtime wages earned. (*Id.* ¶¶ 41-46.) Second, Plaintiff claims that Defendants

violated the overtime provisions of the NYLL, N.Y. Lab. Law §§ 650 *et seq.*, by failing to pay

Plaintiff overtime wages earned.  (*Id.* ¶¶ 47-51.)  Third, Plaintiff claims that Defendants violated the spread of hours provisions under the NYLL §§ 650 *et seq.*, by failing to pay spread of hours wages to Plaintiff on days when he worked more than ten hours.  (*Id.* ¶¶ 52-56.)  Fourth, Plaintiff claims that Defendants violated the Wage Theft Prevention Act ("WTPA") requirements under NYLL §§ 195(3) by failing to provide Plaintiff with compliant weekly wage statements. (*Id.* ¶¶ 57-60.)

Before this Court are cross-motions for summary judgment.  (Mot. for Summ. J., ECF No. 42; Mot. for Partial Summ. J., ECF No. 46.)  Defendants moved for summary judgment, asking that this Court dismiss the claims brought against them.  (Mem. of Law in Supp. of Defs' Mot. at 1, ECF No. 43 ("Defs' Mem.").)  Plaintiff cross-moved for partial summary judgment as to liability only.  (Mem. of Law in Supp. of Pl's Mot. at 1, ECF No. 49 ("Pl's Mem.").)  For the reasons stated below, I respectfully recommend that Defendants' motion be denied, and that Plaintiff's cross-motion be granted in part and denied in part.

I.     **Factual Background[1]**

   A.  **Overview of the Parties**

Plaintiff is a former employee of Defendant Lucky Seven and is currently employed by Defendant Mofongo.  The two restaurants are located next to each other on Saint Nicholas Avenue in New York City.  (Defs' Local Rule 56.1 Statement of Undisputed Facts ¶¶ 2-5, ECF No. 44 ("Defs' Statement").)  In 2016, 2017, and 2018, Lucky Seven and Mofongo each had annual revenues in excess of $500,000.  (Pl's Statement of Undisputed Facts Pursuant to Local Civ. Rule 56.1 ¶¶ 6-7, ECF No. 47 ("Pl's Statement").)

---

[1] The following facts are undisputed, except as noted.

Sammy Cabrera, the general manager of Lucky Seven, hired Plaintiff to work at Lucky Seven sometime in 2011.  (Pl's Statement ¶ 33.)  Eventually, Plaintiff began performing additional work for Mofongo, although the parties disagree as to when that work commenced.  (Pl's Rule 56.1(b) Counterstatement in Response to Defendants' Statement of Undisputed Facts ¶ 5, ECF No. 55 ("Pl's Counter-Statement).)  Avi Dishi eventually fired Plaintiff from Lucky Seven in November 2018.  (Defs' Rule 56.1 Counter-Statement ¶ 40-41, ECF. No. 54 ("Defs' Counter-Statement").)  Plaintiff worked for both Lucky Seven and Mofongo as a stocker, cleaner, shopper, and maintenance person, splitting time between the two restaurants when simultaneously employed by each.  (Defs' Statement ¶ 6-7; Pl's Statement ¶ 40).  The relevant time periods in this case, therefore, concern the period when Plaintiff worked for both Lucky Seven and Mofongo – although there is conflicting evidence as to when that period began[2] – and any time thereafter where Plaintiff can prove that he was inadequately paid by Mofongo.

Avi Dishi owned 50% of Lucky Seven until about 2018, when he became the restaurant's sole owner.  (Pl's Statement ¶ 10.)  Dishi testified that Felix Cabrera owned 50% of Lucky Seven before 2018.  (Deposition of Avi Dishi Tr. 12:8-13:25, ECF. No. 48-7 ("Dishi Dep.").)  Dishi also testified that Felix Cabrera may have hired managers at Lucky Seven.  (*Id.* Tr. 18:16-25.)  However, Felix Cabrera testified that he never owned any part of Lucky Seven and was not involved in any management capacity.  (Deposition of Jose Felix Cabrera Tr. 12:16-13:17, ECF. No. 48-8 ("Felix Cabrera Dep.").)

Dishi currently owns 51% of Mofongo and Felix Cabrera owns 49% of Mofongo.  (Pl's

---

[2] Plaintiff claims that he began working at Mofongo in 2012, whereas Defendants claim that Plaintiff started work at Mofongo in January of 2014.

Statement ¶¶ 16-17.)  Dishi makes major business decisions for Mofongo.  (*Id.* ¶ 18.)  Felix Cabrera does not make business decisions for Mofongo.  (Felix Cabrera Dep. Tr. 13:18-15:8.) Dishi has the authority to sign checks on behalf of both Lucky Seven and Mofongo.  (Pl's Statement ¶¶ 12, 20.)

When Dishi was the 50% owner of Lucky Seven, he hired managers and delegated the responsibility for hiring Lucky Seven employees to those managers.  (Pl's Statement ¶¶ 13-14.) Managers of Lucky Seven needed authorization from Dishi if they wanted to pay employees more than minimum wage.  (Defs' Counter-Statement ¶ 15.)  Sammy Cabrera ran both Lucky Seven and Mofongo as the restaurants' general manager.  (*Id.* ¶ 24.)  Eddy Mourad also worked simultaneously as the office manager for both Lucky Seven and Mofongo.  (*Id.* ¶¶ 25-26.)

Neither Lucky Seven nor Mofongo requested that Plaintiff track or report his time worked.  (Pl's Statement ¶ 45.)  Further, Plaintiff did not record the exact amount of time that he worked at Mofongo or at Lucky Seven.  (*Id.* ¶ 46.)  And, Lucky Seven's time records for Plaintiff were destroyed in a flood.  (*Id.* ¶ 48.)

Each week while working simultaneously for both restaurants, Plaintiff received one check from Mofongo, one check from Lucky Seven, and some cash for his work.  (Pl's Statement ¶¶ 49-50.)  In total, Plaintiff received $1,000 each week in the aggregate for his work at both Lucky Seven and Mofongo.  (Defs' Counter-Statement ¶ 52.)  The parties dispute, however, whether Plaintiff received overtime premium pay for any work he performed in excess of 40 hours in a week and the frequency with which Plaintiff in fact worked in excess of 40 hours.  (*Id.* ¶¶ 66-67.)  Dishi, Mofongo, and Lucky Seven were aware of the overtime requirement to pay employees time and a half after 40 hours.  (*Id.* ¶¶ 72-73, 75.)  The parties also dispute whether

Plaintiff received any spread of hours pay for days when he worked shifts longer than 10 hours. (*Id.* ¶ 68.)

Each time that Lucky Seven and Mofongo paid Plaintiff, he received paystubs.  (Pl's Statement ¶ 54.)  The paystubs inaccurately indicated that Plaintiff worked exactly 28 hours at each restaurant each pay period.  (Defs' Counter-Statement ¶ 55.)  On some weeks when Lucky Seven and Mofongo paid Plaintiff, he signed a "weekly time record," which lists Plaintiff as having worked 40 hours in both Mofongo and Lucky Seven for a total of 80 hours worked — hours that differ from those reflected on the paystubs.  (Pl's Statement ¶ 58.)

### B.  Procedural History

Plaintiff filed his Complaint on May 1, 2019.  Defendants filed their answer to the complaint on June 17, 2019.  Following discovery, on March 17, 2020, Defendants filed a motion for summary judgment.  On the same day, Plaintiff also filed a motion for partial summary judgment.

In their motion for summary judgment, Defendants contend that they did not violate the FLSA, NYLL, or the WTPA.  Specifically, Defendants assert that Plaintiff was properly compensated for his work at Lucky Seven and Mofongo and that Defendants complied with the wage notice and wage statement requirements of the WTPA.  Defendants also argue that neither Dishi nor Felix Cabrera, in their individual capacities, were Plaintiff's employer and therefore cannot be found liable for the alleged wage and hour violations.

In his motion for partial summary judgment, Plaintiff asks the Court to find: (1) that defendants are liable under the FLSA and the NYLL for unpaid overtime wages; (2) that defendants are liable under the NYLL for unpaid spread-of-hours payments; (3) that that

defendants are liable under the WTPA for statutory damages for their failure to provide proper wage notices and wage statements; (4) that defendants are liable under the FLSA and the NYLL for liquidated damages, prejudgment interest, and reasonable attorney's fees; (5) that Lucky Seven and Mofongo are jointly and severally liable under the FLSA and the NYLL as joint employers of plaintiffs; and that (6) Dishi and Felix Cabrera are properly included in the Complaint as Plaintiff's employers and can therefore be found liable as well.

## II.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court is required to resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  (*Id.* at 255.)  However, the opposing party "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations and citations omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  In sum, if the court concludes that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is

no 'genuine issue for trial'" and summary judgment is warranted.  *Matsushita*, 475 U.S. at 587 (citation omitted).

Typically, "[o]n cross-motions for summary judgment, the court must consider each motion independently of the other and when evaluating each, the court must consider the facts in the light most favorable to the non-moving party."  *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014).  "[E]ven when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party." *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Heublein, Inc.,* 996 F.2d at 1461).  Where "the motion and cross-motion seek a determination of the same issues, the Court may consider them together."  *ExteNet Sys., Inc. v. Village of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019); *see also Chartis Seguros Mexico, S.A. de C.V.*, 3 F. Supp. 3d at 179 (considering cross motions for partial summary judgment together where two parties moved on the issue of defendant's limitation of liability defense because the motions presented "two sides of the same coin").

III.    **DISCUSSION**

Below, I first address the parties' arguments with respect to the Defendants' status as employers under the FLSA and the NYLL.  Then, for those claims that are not resolved by that initial analysis, I address Plaintiff's substantive claims as set forth in his complaint.  It bears noting that Plaintiff does not seek summary judgment on the amount of damages; his partial motion for summary judgment is limited to issues of liability.  The damages calculations will be reserved for trial at a later date, if necessary.

A.    **Were Defendants Dishi and Felix Cabrera "Employers" Under the Statutes?**

Under the FLSA, the term "employer" applies to "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  *See* 29 U.S.C. §§ 203(a), (d).  The FLSA broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  An employment relationship therefore exists under the FLSA when the putative employer possesses the power to control the workers at issue.  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  The inquiry is focused on the economic realities of the relationship between the putative employer and the putative employee.  *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 507 (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008)).  To apply this "economic reality test," the Second Circuit considers whether the putative employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019).  No one factor is dispositive, as the test encompasses the totality of the relevant circumstances. *Id.* (citing *Herman*, 172 F.3d at 139).  And conveniently, the standard governing employment status under the NYLL is nearly identical to that of the FLSA."  *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019)   As such, the analysis of Defendants' employment status under the FLSA applies with equal force to Plaintiff's NYLL claims.

The parties agree, at all times relevant to this action, that both Lucky Seven and Mofongo were Plaintiff's employers under the FLSA.  (*See* Defs' Counter-Statement ¶ 32.)  The

parties dispute, however, whether Defendants Dishi and Felix Cabrera were employers in their individual capacities with respect to Plaintiff.

Individual officers, directors, or those in similar roles may be found to be "employers" under the FLSA where the individual has operational control of the employing entity, possesses an ownership interest in the entity, controls significant functions of the business, or determines employee salaries and makes hiring decisions. *Raquer v. Café Buon Gusto Corp.*, No. 11-cv-7774 (PAE), 2012 WL 4494882, at *2 (S.D.N.Y. Sept. 28, 2012) (quoting *Lopez v. Silverman*, 14 F. Supp. 2d 405, 412 n.4 (S.D.N.Y. 1998)).  To determine the putative employer's level of control, the Second Circuit applies the four-factor economic reality test, as described above.  *Id.*

Here, the parties mostly agree with respect to Defendant Dishi's involvement with Lucky Seven.  Specifically, the parties agree that during the time when Plaintiff worked for both Lucky Seven and Mofongo – although the timeframe itself is in dispute – Dishi owned 50% of Lucky Seven, Dishi hired Lucky Seven's managers and delegated hiring authority to those managers, and Dishi fired Plaintiff from Lucky Seven in November 2018.  (Defs' Counter-Statement ¶¶ 10, 13-14, 41.)

With respect to Defendant Dishi's role with Mofongo, the parties also agree that Dishi is the majority owner of the Mofongo restaurant, Dishi makes major business decisions for Mofongo, and Dishi has check writing authority for Mofongo's bank account.  (Defs' Counter-Statement ¶¶ 16, 18, 20.)

Despite these examples of control, Defendants motion for summary judgment asks the Court to find that no reasonable fact-finder could determine that Dishi was Plaintiff's employer. However, Defendants offer no persuasive factual or legal basis to support their argument.  The

undisputed facts discussed above support a finding that Dishi is an "employer" under the FLSA. Therefore, Defendants have failed to meet their burden to show that they are entitled to a favorable judgment as a matter of law on this point.

Defendants argue that this Circuit's decision in *Irizarry v. Castimatidis*, 722 F.3d 99 (2d Cir. 2013) requires the opposite result. I disagree. While that case certainly stands for the proposition that mere ownership interest is insufficient to establish an individual's status as an employer, the Court in *Irizarry* also clarified that an individual officer exercises sufficient control over an employee to be considered an employer under the FLSA if his/her decision-making directly affects the employee's terms and conditions of employment. *Id.* at 109. The fact that Defendant Dishi fired Plaintiff, in conjunction with the other facts discussed above, suggests that the economic realities of Dishi and Plaintiff's relationship are that of an employer and an employee. Defendants certainly have not demonstrated that no reasonable juror could find that Dishi was Plaintiff's employer. Accordingly, I respectfully recommend that the motion for summary judgment as to Dishi be denied. Further, to the extent Plaintiff demonstrates liability, Dishi should be found to be a jointly and severally liable employer.

There are genuine issues of material fact with respect to Felix Cabrera's involvement both with Lucky Seven and Mofongo. For example, the parties disagree concerning whether Felix Cabrera was an owner of Lucky Seven and whether Felix Cabrera made business decisions on behalf of Mofongo. (Defs' Counter-Statement ¶¶ 11, 13-15.) Because Felix Cabrera's ownership interest and functional role within both of these establishments is central to the question of whether or not he acted as Plaintiff's employer, reasonable minds could differ with respect to whether Felix Cabrera should be considered an employer under the FLSA. In other

words, a juror could potentially find that Cabrera was an employer as defined by the FLSA and NYLL. Hence, I also recommend that Defendants' motion be denied as to Cabrera.

### B. Are Lucky Seven and Mofongo Joint Employers Under the FLSA?

Plaintiff requests a finding that Lucky Seven and Mofongo were joint employers within the meaning of the FLSA and the NYLL and, therefore, are jointly and severally liable for any violations that are found. Defendants do not address this argument in their brief. Rather, they maintain that neither Lucky Seven nor Mofongo violated the relevant provisions of the FLSA and the NYLL.

Joint employment can exist when multiple employers separately employ a worker and are sufficiently related to one another with respect to the employee in question. 29 C.F.R. § 791.2(e)(1). In such a situation, sometimes referred to as "horizontal" joint employment, there is a clear employment relationship between each entity and the employee, respectively. In these cases, courts must focus on the relationship between the putative joint employers themselves in order to determine whether the entities are sufficiently associated. *Id.* Pursuant to regulations issued by the Department of Labor's Wage and Hour Division ("DOL"), employers will be found to be joint employers in these circumstances if: (1) there is a formal arrangement between them to share the employee's services; (2) one employer acts in the interest of the other employer with respect to the employee; or (3) considering all of the relevant circumstances, the two employers share control of the employee because one employer controls, is controlled by, or is under common control with the second employer. *Id.*

The DOL has issued guidance to aid courts in resolving these questions of horizontal joint employment. One Opinion Letter from 2016 provides the key considerations to assess

11

whether the level of association between employers is sufficient to establish horizontal joint employer status.  For example, whether employers have overlapping officers, whether they share common control over operations, whether they engage in joint supervision, or whether there are agreements between them with respect to their mutual employees are all relevant considerations that contribute to the determination. *See* Opinion Letter from U.S. Dep't of Labor, Wage and Hour Div., 2016 WL 284582 (Jan. 20, 2016).  The joint employment analysis is essentially identical under the FLSA and the NYLL.  *Guaraca v. Cafetasia Inc.*, 17-CV-1516 (VSB), 2018 WL 4538894, at *6 (S.D.N.Y. Sept. 20, 2018).

As highlighted by the DOL, the pivotal consideration when determining joint employment is the nature of the relationship between the two employers. Opinion Letter, 2016 WL 284582 at *4.  Here, the undisputed facts support a finding of joint employment.  In particular, it is undisputed that Defendant Dishi owned 50% of Lucky Seven and 51% of Mofongo during the relevant time period when Plaintiff worked for both establishments.  (Defs' Counter-Statement ¶¶ 10, 16.)  It is also undisputed that Sammy Cabrera managed both Lucky Seven and Mofongo simultaneously.  (*Id.* ¶ 24.)  Moreover, it is undisputed that Sammy Cabrera gave Plaintiff his job responsibilities at Lucky Seven and later assigned Plaintiff to work at Mofongo.  (*Id.* ¶¶ 29-30, 42.)  Additionally, the parties agree that Eddy Mourad was an office manager at both Lucky Seven and Mofongo and that he acted as the office manager for both restaurants simultaneously, at some point. (*Id.* ¶¶ 25-27.)  As referenced above, such common ownership, management, and operations are material factors in assessing potential horizontal joint employment.

It is also undisputed and material that, when Plaintiff worked for both Lucky Seven and Mofongo, he purchased produce for both restaurants simultaneously, purchased supplies for both restaurants simultaneously, received deliveries for both restaurants, and put those deliveries away at the same time. (*Id.* ¶¶ 37-39). This sort of intermingling of operations is also a material factor to be considered, as per DOL guidelines. *See* Opinion Letter, 2016 WL 284582 at *7.

To be sure, there are disputed facts in the record that, while perhaps relevant to the joint employer inquiry, are not material to the analysis. For instance, there is a legitimate dispute as to whether or not Defendant Felix Cabrera held any ownership interest in Lucky Seven. (*See* Defs' Counter-Statement ¶ 11.) Even assuming, as Defendants contend, that Felix Cabrera had no involvement with Lucky Seven (as required on a motion for Summary Judgment), that fact does not alter the conclusion given the substantial undisputed facts highlighted above. Similarly, assuming that the restaurants' administrative offices were physically separate, that fact is not material given the totality of the circumstances highlighted above. The fact remains that these establishments shared common ownership through Defendant Dishi, Plainitff's terms and conditions of employment (*i.e.*, his job responsibilities) in both restaurants were determined by Sammy Cabrera, and Plaintiff simultaneously carried out identical job duties for both employers during the work day. Clearly then, even assuming facts most favorable to Defendants, these restaurants were sufficiently associated with one another to warrant a finding of joint employment.

Given the above, I recommend finding that Lucky Seven and Mofongo are joint employers under the FLSA and the NYLL and are therefore jointly and severally liable for any wage and hour violations that are shown.

**C.      Liability as to Plaintiff's Substantive Claims**

**a)      Unpaid Overtime Claims under the FLSA and NYLL**

The FLSA and NYLL require employers to "compensate employees who work over 40 hours per week with overtime pay at the rate of one and one-half times the regular rate. *Pineda*, 831 F. Supp. 2d at 673 (internal quotation marks omitted); *see also* 29 U.S.C. §§ 207(a)(1); 12 NYCRR § 142-2.2.  "Even when wages exceed the minimum prescribed by Congress, the parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular hourly rate for all hours actually worked in excess of 40."  *Walling v. Helmerich & Payne*, 323 U.S. 37, 42 (1944); *see also Pineda*, 831 F. Supp. 2d at 673-74.

Where, as here, the employers assert that the employee's "weekly salary includes FLSA-required overtime payments [the employers] must prove not just that the employee regularly works over 40 hours per week, but also that the employer and employee contracted for the weekly salary to include the overtime period."  *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999).  If the number of hours per week for which the employee was compensated is unknown, there is a rebuttable presumption that the fixed salary covers 40 hours.  *See e.g.*, *De Jesus v. Empire Szechuan Noodle House Inc.*, No. 18-cv-1281 (JPO), 2019 WL 1789901, at *2

(S.D.N.Y. Apr. 24, 2019) (citing *Moon v. Kwon*, 248 F. Supp. 2d 201, 207-08 (S.D.N.Y. 2002)).[3]
Additionally, Plaintiff's NYLL overtime claim is subject to the same standards.  *See id*.

Here, it is undisputed that Plaintiff was paid $1,000 in total, per week, in the aggregate from Lucky Seven and Mofongo and that, at least occasionally, Plaintiff worked over 40 hours over the course of his work week.  The parties dispute, however, whether Plaintiff was paid a fixed salary for these work weeks, or whether he was compensated on an hourly basis in accordance with the number of hours actually worked.  (*See e.g.*, Pl's Counter-Statement ¶ 8.)  The only evidence submitted by Defendants to suggest that Lucky Seven and Mofongo agreed with Plaintiff that his $1,000 in compensation would cover all hours worked consists of weekly time records stating that Plaintiff's "payments include any over time."  (Declaration of Eric. M. Zim in Support of Defendants' Summary Judgment Motion, Exs. D-E, G-N, ECF No. 45 ("Zim Decl.").)  However, Plaintiff argues that these records are inadmissible hearsay as they were never properly authenticated with an accompanying affidavit.  Plaintiff is correct.  These documents were not properly introduced and may not be relied on in determining this motion. *See Perpall v. Pavetek Corp.*, No. 12-cv-0336 (PKC), 2017 WL 1155764, at *9 (E.D.N.Y. Mar. 27, 2017) (holding, on summary judgment, that medical records were not properly authenticated as business records because the attorney seeking to authenticate the records via affidavit did not possess the necessary knowledge to authenticate the record, although the documents were

---

[3] For purposes of Plaintiff's overtime claims under the NYLL, whether or not Plaintiff is a salaried employee in the hospitality industry could significantly alter the applicable rules for overtime rate calculation.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5 (2020) ("If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.").

admitted on other grounds); *see also Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) (generally clarifying that, under Rule 56, a district court may only rely on admissible evidence in awarding summary judgment).  Absent these records, there is no evidence showing that Plaintiff and Defendants agreed that his compensation would cover all hours worked.  In any event, the Defendants themselves admit that the paystubs Plaintiff received did not accurately list the number of hours Plaintiff worked.  (Defs' Counter-Statement ¶ 55.)  Defendants also admitted that the time sheets differ from the paystubs and neither type of record accurately breaks out overtime hours and overtime rate.  (Defs' Counter-Statement ¶¶ 55, 58.)  Thus, the time sheets are not reliable.  Accordingly, I recommend finding that Plaintiff was not paid overtime in accordance with his hours worked and that Plaintiff's motion be granted as to liability but that any computation of overtime be determined after trial, and that Defendants' motion be denied on the overtime claims.

I also recommend that Defendants Dishi, Lucky Seven, and Mofongo be held jointly and severally liable to Plaintiff for back-pay to the extent that they failed to pay Plaintiff the proper overtime wages.

### b)      Spread of Hours Claim under the NYLL

Under the NYLL, employers are also required to pay employees an extra hour's pay at the NYLL minimum wage rate for each day the employee works more than 10 hours.  NYCRR § 146-1.6(a); *see also* NYCRR § 142-2.18 ("The *spread of hours* is the interval between the beginning and end of an employee's workday." (emphasis in original)); *see also Shahriar v. Smith & Wollensky Rest. Grp.*, Inc., 659 F.3d 234, 241 (2d Cir. 2011).

Here, it is undisputed that Plaintiff was entitled to spread-of-hours pay from January 2014 to early November 2018.  (Pl's Counter-Statement ¶ 11.)  Defendants maintain, however, that these spread-of-hours premiums were included in Plaintiff's weekly compensation. (Def's Mem. at 8.)  Even assuming Plaintiff's allegations about the frequency of his ten-plus-hour days, Plaintiff's weekly pay could cover the spread-of-hours payments. I note, however, there is conflicting evidence in the record as to the frequency with which Plaintiff worked in excess of ten hours a day.  (*See* Pl's Mem. at 13.)

Based on the presence of these material factual disputes about the frequency of days when spread-of-hours might apply and whether Plaintiff's pay included spread of hours pay, I recommend that Plaintiff's motion be denied with respect to his third claim.  Likewise, I recommend that Defendants' motion for summary judgment be denied with respect to Plaintiff's third claim.

### c)    Statutory Damages Claim under the WTPA

Under the WTPA, employers are required to:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; prevailing wage supplements, if any, claimed as part of any prevailing wage or similar requirement pursuant to article eight of this chapter; and net wages.

NYLL § 195(3).  Additionally, the wage statements provided to non-exempt employees "shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."  NYLL § 195(3). Employers

may be held liable "for furnishing wage statements that fail to comply with all of the WTPA's enumerated requirements." *Severino v. 436 W. L.L.C.*, No. 13-cv-3096 (VSB), 2015 WL 12559893, at *9 (S.D.N.Y. Mar. 19, 2015). NYLL § 198 sets the amount of statutory damages an employee may recover for violations of NYLL § 195.

The version of NYLL § 198(1-d) in effect at the time Plaintiff commenced his employment with Defendants, and in effect through February 26, 2015, limited the total amount of the statutory damages to $2,500, excluding reasonable attorneys' fees and costs, for violations of NYLL § 195(3). Prior to February 26, 2015, when an employer failed to provide an employee with wage statements that comply with the WTPA, the employee was entitled to recover $100 for each work week the violation continued to occur. NYLL § 198(1-d). Subsequent amendments to NYLL § 198, effective February 27, 2015, increased the daily amounts employees could recover for violations of NYLL § 195(3)'s wage statement provision to $250 per work day. NYLL § 198(1-d). The amendment also increased the total statutory damages award for violations of NYLL § 195(3) to $5,000, excluding costs and reasonable attorneys' fees. NYLL § 198 (1-b), (1-d); *see also Perez Garcia v. Hirakegoma Inc.*, No. 17-cv-7608 (SLC), 2020 WL 1130765, at *10-11 (S.D.N.Y. Mar. 9, 2020).

Here, Defendants Lucky Seven, Mofongo, and Dishi are liable under the WTPA for maintaining "inaccurate time records." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017). In *Rojas*, the court held that the employer was liable under the WTPA for providing its employees with inaccurate wage statements. *Id.* at 413. The wage statements were inaccurate "in that they did not reflect all of the hours" the employees worked. *Id.* at 413. Here, the Defendants, by their own admission, provided wage statements

that inaccurately indicated that Plaintiff worked exactly 28 hours at each restaurant each pay period.  In addition, the weekly time records that Plaintiff was given inaccurately list Plaintiff as working 40 hours in each Mofongo and Lucky Seven for a total of 80 hours worked.  Therefore, I recommend that Defendants Dishi, Lucky Seven, and Mofongo be held jointly and severally liable to Plaintiff for statutory damages to the extent that they violated the NYLL § 195(3) wage statement provision.

Accordingly, I respectfully recommend that Plaintiff's motion for partial summary judgment be granted with respect to Plaintiff's fourth claim, as it applies to Defendants Lucky Seven, Mofongo, and Dishi.  Additionally, I respectfully recommend that Defendants' motion for summary judgment be denied with respect to Plaintiff's fourth claim.

### D.    Additional Remedies

#### a)    Entitlement to Liquidated Damages

Under both the FLSA and NYLL, a plaintiff who successfully brings an FLSA or NYLL claim to recoup payments owed for unpaid regular wages and overtime wages is eligible to recover liquidated damages equal to the total amount of his or her compensatory damages.  29 U.S.C. § 216(b); NYLL § 663(1); *see also Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016); *Zokirzoda v. Acri Cafe Inc.*, No. 18-cv-11630 (JPO), 2020 WL 359908, at *6 (S.D.N.Y. Jan. 22, 2020).  A plaintiff is also eligible to receive a liquidated damages award for unpaid spread of hours wages under the NYLL.  *See Elisama v. Ghzali Gourmet Deli Inc.*, No. 14-cv-8333 (PGG) (DF), 2016 WL 11523365, at *6 (S.D.N.Y. Nov. 7, 2016) (citing NYLL § 663(1)).

A plaintiff is typically entitled to a liquidated damages award under the FLSA or NYLL, unless the defendants establish good faith as a defense.  29 U.S.C. § 216(b); NYLL § 663(1); *see*

*also Chowdhury*, 666 F. App'x at 60; *Zokirzoda*, 2020 WL 359908, at *6.  "The employer's

burden is 'a difficult one,' and 'double damages are the norm and single damages the

exception.'"  *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 316 (S.D.N.Y. 2011)

(quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008)).  However, as

explained by the Second Circuit, a plaintiff may not recover liquidated damages under both the

FLSA and the NYLL for the same claims.  *See Chowdhury*, 666 F. App'x at 61 (establishing that

plaintiffs cannot recover liquidated damages under both the FLSA and NYLL because the

liquidated damages provisions of the FLSA and NYLL "are identical in all material respects, serve

the same functions, and redress the same injuries"); *see also Zokirzoda*, 2020 WL 359908, at *6.

Here, Defendants Dishi, Lucky Seven, and Mofongo have not challenged Plaintiff's

assertion that they willfully violated the NYLL spread of hours provisions.  Therefore,

Defendants have not established a good faith defense.  Accordingly, I recommend that

Defendants Dishi, Lucky Seven, and Mofongo be held jointly and severally liable to Plaintiff for

liquidated damages under the NYLL, with the ultimate amount to be determined after a trial on

damages.

### b)   Entitlement to Prejudgment Interest

Under the FLSA, pre-judgment interest may not be awarded in addition to liquidated

damages.  *See Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015).

However, plaintiffs may recover an award of pre-judgment interest in addition to liquidated

damages for unpaid overtime wages and unpaid spread of hours wages awarded under the

NYLL.  NYLL § 198(1-a); *see also Zokirzoda*, 2020 WL 359908, at *6; *Andrade v. 168 First Ave*

*Rest. Ltd.,* 14-cv-8268 (JPO) (AJP), 2016 WL 3141567, at *10 (S.D.N.Y. June 3, 2016), *adopted by*

2016 WL 3948101 (S.D.N.Y. July 19, 2016).  "The availability of both NYLL liquidated damages and pre-judgment interest 'remains true even where liability is found not only under the NYLL but also under the FLSA.'"  *Fermin*, 93 F. Supp. 3d at 48-49 (quoting *Begum v. Ariba Disc., Inc.*, No. 12-cv-6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015)); *see also Thomas v. iStar Fin., Inc.,* 652 F.3d 141, 150 n.7 (2d Cir. 2011).  Pre-judgment interest, however, does not apply to liquidated damages or statutory penalties.  *See Zokirzoda*, 2020 WL 359908, at *6; *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988); *Ortega v. JR Primos 2 Rest. Corp.*, No. 15-cv-9183, 2017 WL 2634172, at *6 (S.D.N.Y. June 16, 2017).  Accordingly, I recommend that Defendants Dishi, Lucky Seven, and Mofongo be held jointly and severally liable to Plaintiff for prejudgment interest on the unpaid overtime wages and unpaid spread-of-hours wages found to be owed under the NYLL after a trial on damages.

### c)  Attorneys' Fees and Costs

A plaintiff who successfully brings claims pursuant to the FLSA and NYLL is entitled to recover reasonable attorneys' fees and costs under both the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663(1); *see also Feng Chen v. Patel*, No. 16-cv-1130 (AT) (SDA), 2019 WL 2763836, at *14 (S.D.N.Y. July 2, 2019); *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012).  Accordingly, I recommend that Defendants Dishi, Lucky Seven, and Mofongo be held jointly and severally liable to Plaintiff for reasonable attorneys' fees and costs; an amount to be determined after a trial on damages.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion for summary judgment be denied and Plaintiff's motion for partial summary judgment be granted

in part and denied in part.  Specifically, I recommend that Plaintiff's motion for partial summary judgment be granted on Plaintiff's FLSA and NYLL overtime claims with respect to Defendants Dishi, Lucky Seven, and Mofongo.  I recommend that Plaintiff's motion be denied with respect to his spread-of-hours claim.  I recommend that Plaintiff's motion be granted with respect to his WTPA claim with respect to Defendants Dishi, Lucky Seven, and Mofongo.  I recommend that Plaintiff's motion for partial summary judgment be denied on all claims that apply to Defendant Felix Cabrera.  Finally, I recommend that Defendants Lucky Seven and Mofongo be held jointly and severally liable to Plaintiff for all damages determined to be due after a trial on damages.

Date:   July 31, 2020
        New York, New York

Respectfully submitted,

KATHARINE H. PARKER
United States Magistrate Judge

## NOTICE

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If Plaintiff files written objections to this Report and Recommendation, the Defendants may respond to Plaintiff's objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Alternatively, if Defendants files written objections, Plaintiff may respond to such objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d).  Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**