19 CV 3876 (PAE) (KHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESUS BRITO,

Plaintiff,

- against -

LUCKY SEVEN RESTAURANT & BAR LLC d/b/a
LUCKY 7 TAPAS BAR, LA CASA DEL MOFONGO
INC., FELIX CABRERA, AVI DISHI, and JOHN DOES
#1-10,

Defendants.

**DEFENDANTS' OBJECTIONS TO THE REPORT
AND RECOMMENDATION DATED JULY 31, 2020
DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND GRANTING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT IN PART AND DENYING SAME IN
PART**

**HORWITZ & ZIM LAW GROUP, P.C.**
*Attorney for Defendants*
260 Madison Avenue, 16th Floor
New York, N.Y.  10016

By:  Eric M. Zim, Esq.
Tel:  (212) 644-1857
Email:  ezim@hzlaw.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ....................................................................... 1

STANDARD OF REVIEW ............................................................................. 2

ARGUMENT

      POINT I

            R&R WRONGLY CONCLUDED DISHI IS AN
EMPLOYER UNDER FLSA AND THAT
CABRERA COULD BE FOUND TO BE AN
EMPLOYER AS DEFINED UNDER FLSA ............................................ 3

      POINT II

            R&R WRONGLY CONCLUDED THAT
PLAINTIF WAS NOT PAID OVERTIME .............................................. 11

            A. PLAINTIFF WAS PROPERLY COMPENSATED FOR THE
HOURS HE WORKED…………………………………………..11

            B. NOTWITHSTANDING THE ABOVE, IF PLAINTIFF'S
COMPENSATION IS CONSIDERED A FIXED WEEKLY
SALARY, THESE PAYMENTS COMPLY WITH THE FLSA AND
NYLL…………………………………………………………..14

            C. R&R ERRONEOUSLY CONCLUDED THAT THE WEEKLY
TIME RECORDS ARE
INADMISSIBLE…………………………………………..…...16

      POINT III

            R&R INCORRECTLY CONCLUDED
DEFENDANTS' SUMMARY JUDGMENT BE
DENIED ON PLAINTIFF'S "SPREAD OF
HOURS" CLAIM ............................................................................. 1119

      POINT IV

            R&R INCORRECTLY CONCLUDED
DEFENDANTS ARE LIABLE UNDER THE
WAGE THEFT PREVENTION ACT ................................................. 1121

POINT V

R&R INCORRECTLY CONCLUDED
PLAINTIFF IS ENTITLED TO LIQUIDATED
DAMAGES, PREJUDGMENT INTEREST, AND
ATTORNEYS' FEES..........................................................................1122

CONCLUSION............................................................................................................ 223

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                                    <u>**Pages**</u>

Amaya v. Superior Tile and Granite Corp.,
    10 Civ. 4525 (PGG), 2012 WL 130425 (S.D.N.Y. Jan. 17, 2012) ..........................................14

Barfield v. N.Y.C. Health & Hosps. Corp.,
    537 F.3d 132 (2d Cir. 2008) ...........................................................................................3, 4, 5

Cavalieri v. TJH Med. Serv. P.C.,,
    14 Civ. 1818 (ILG)(JO), 2014 WL 7928459 (E.D.N.Y. Dec. 30, 2014) ...................................2

Chocolatl v. Rendezous Café, Inc.,
    18 Civ. 3372 (CBA)(VMS), 2019 WL 5694104 (E.D.N.Y. Aug. 16, 2019) ..........................22

Garcia v. JonJon Deli Grocery Corp.,
    13 Civ. 8835 (AT), 2015 WL 4940107 (S.D.N.Y. Aug. 11, 2015) ..........................................12

Giles v. City of New York,
    41 F. Supp.2d 308 (S.D.N.Y. 1999) .......................................................................................15

Herman v. RSR Security Services Ltd.,
    172 F.3d 132 (2d Cir. 1999) .........................................................................................5, 8, 11

Hernandez v. Jrpac Inc.,
    14 Civ. 4176 (PAE), 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016) .............................13

Irizarry v. Catsimatidis,
    722 F.3d 99 (2d Cir. 2013) ..............................................................................3, 5, 6, 7, 8, 11

Jacobsen v. Stop & Shop Supermarket Co.,
    2 Civ. 5915, 2003 WL 21136308 (S.D.N.Y. May 15, 2003),,................................................15

Jiao v. Shi Ya Chen,
    3 Civ. 165 (DF), 2007 WL 4944767 (E.D.N.Y. Mar. 30, 2007) ......................................15, 16

Kuebel v. Black & Decker Inc.,
    643 F.3d 352, 362 (2d Cir. 2011) ...........................................................................................12

Maldonado v. La Nueva Rampa, ,
    10 Civ. 8195 (LLS)(JLC), 2012 WL 1669341 (S.D.N.Y. May 14, 2012).............................23

Marcelino v. 374 Food, Inc.,
    16 Civ. 6287 (KPF), 2018 WL 1517205 (S.D.N.Y. Mar. 27, 2018). ....................................12

Moon v. Kwon, ,
    248 F.Supp.2d 201 (S.D.N.Y. 2002) .......................................................................................16

**<u>Cases</u>**                                                                                                       **<u>Pages</u>**

<u>Perpall v. Pavetek Corp.</u>, ,
   12 Civ. 0336 (PKC), 2017 WL 115764 (E.D.N.Y. Mar. 27, 2017) ............................ 16, 17, 18

<u>Pineda v. Frisolino, Inc.</u>,.,
   15 Civ. 3774, 2017 WL 3835882 (S.D.N.Y. Jul. 30, 2018) .................................................. 15

<u>Rojas v.Splendor Landscape Designs Ltd.</u>, ,
   268 F.Supp.3d 405 (E.D.N.Y. 2017) ............................................................................. 21, 22

<u>Severino v. 436 West L.L.C.</u>,
   13 Civ. 3096 (VSB), 2015 WL 12559893 (S.D.N.Y. Mar. 19, 2015) .................................... 21

**Statutes**

28 U.S.C. §636(b)(1)(C) ............................................................................................................ 3

29 U.S.C. §203(a) ...................................................................................................................... 4

29 U.S.C. §203(d) ...................................................................................................................... 4

29 U.S.C. §216(b) .................................................................................................................... 22

Fed. R. Civ. P. 56 ...................................................................................................................... 1

Fed. R. Civ. P. 72(b)(2) .............................................................................................................. 2

Fed. R. Civ. P. 72(b)(3) ........................................................................................................... 2, 3

N.Y.L.L. §195(3) ............................................................................................................ 1, 21, 22

N.Y.L.L. §198 (1-a) ................................................................................................................. 22

N.Y.L.L. §652(1) ..................................................................................................................... 20

N.Y.L.L. §663(1) ..................................................................................................................... 22

**Regulations**

12 N.Y.C.R.R §146-1.6 ............................................................................................................ 19

## PRELIMINARY STATEMENT

On or about July 31, 2020, the Honorable Magistrate Judge Katharine H. Parker issued a Report and Recommendation ("R&R")[1], recommending: (1) Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 be denied, and (2) Plaintiff's Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56 be granted in part and denied in part.

Defendants, Lucky Seven Restaurant & Bar LLC d/b/a Lucky 7 Tapas Bar ("Lucky Seven"), La Casa del Mofongo Inc. ("Mofongo"), Felix Cabrera ("Cabrera"), and Avi Dishi ("Dishi") (collectively, "Defendants"), respectfully submit these objections to the portions of the R&R recommending that:

(1)     Defendants' motion for summary judgment as to the individual Defendants, Dishi and Cabrera, be denied as the R&R wrongly concluded that the undisputed facts support a finding that Dishi is an "employer" under the Fair Labor Standards Act (the "FLSA") and that a jury could find that Cabrera was an employer as defined by the FLSA.  In addition, the R&R also wrongly concluded that to the extent Plaintiff demonstrates liability, Dishi should be found to be a jointly and severally liable employer.  Here, the R&R disregarded key undisputed facts and misapplied the legal basis supporting Defendants' argument on this issue as explained below.

(2)     Plaintiff's motion for summary judgment be granted as to liability on his overtime claims under the FLSA and New York Labor Law ("NYLL"), and Defendants' motion for summary judgment be denied on the overtime claims, as the R&R wrongly concluded that Plaintiff was not paid overtime in accordance with his

---

[1] Civil Docket Entry No. 58

hours worked.  On this issue, it is clear that the R&R completely disregarded key facts and rests on errors of law as more fully set forth below.

(3)   Defendants' motion for summary judgment be denied with respect to Plaintiff's "spread of hours" claim; here, it has been demonstrated that Plaintiff is not owed any "spread of hours" compensation as this has already been included in Plaintiff's compensation.

(4)   Plaintiff's motion for summary judgment be granted as to his claim that Defendants violated the Wage Theft Prevention Act ("WTPA") requirements under NYLL §195(3), and Defendants' motion for summary judgment on this claim be denied, as the R&R incorrectly concluded that Defendants are liable under the WTPA for maintaining inaccurate time records even though the Defendants substantially complied with the requirements of NYLL §195(3) as discussed below.

(5)   Defendants are liable to Plaintiff for liquidated damages, prejudgment interest, and attorneys' fees; here, these additional remedies cannot be awarded where Defendants have not violated the overtime payment provisions of the FLSA and NYLL.

Accordingly, as more fully set forth below, Defendants respectfully request that the Court reject the portions of the R&R to which Defendants have raised objections herein.

### STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file written objections to a magistrate judge's proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  In the context of dispositive motions, the district judge must review *de novo* those portions of a recommendation to which a party objects.  Cavalieri v. TJH Med. Serv. P.C., 14 Civ. 1818 (ILG)(JO), 2014 WL 7928459, at *1 (E.D.N.Y. Dec. 30, 2014); and Fed. R. Civ. P. 72(b)(3).  See also 28 U.S.C.§

2

636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  After de novo review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## ARGUMENT

### POINT I

### R&R WRONGLY CONCLUDED DISHI IS AN EMPLOYER UNDER FLSA AND THAT CABRERA COULD BE FOUND TO BE AN EMPLOYER AS DEFINED UNDER FLSA

The R&R incorrectly determined that Dishi is an employer under the FLSA and that a jury could find that Cabrera was an employer as defined by the FLSA.  R&R at pp. 10-11.  Additionally, the R&R also incorrectly concluded that to the extent Plaintiff demonstrates liability, Dishi should be found to be a jointly and severally liable employer.  R&R at p. 10.  In reaching these erroneous conclusions, the R&R clearly disregarded significant undisputed facts and misapplied legal authority on this issue.

More specifically, the R&R incorrectly determined that Irizarry v. Catsimatidis, 722 F.3d 99 (2d Cir. 2013) does not support Defendants' argument on this issue.  R&R at p. 10.  In addition, the R&R improperly focused on only one area of inquiry as set forth in Irizarry, instead of the totality of the whole activity as required in this circuit (see Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008)).  Indeed, the R&R simply focused on one factor of the analysis noting that Irizarry "clarified that an individual officer exercises sufficient control over an employee to be considered an employer under the FLSA if his/her decision-making directly affects the employee's terms and conditions of employment."  R&R at p. 10.

3

Based upon this incomplete analysis, the R&R relies almost entirely on the sole act of Dishi firing Plaintiff, due to suspected stealing at Lucky Seven, to conclude that Dishi is Plaintiff's employer under the FLSA.  R&R at p. 10.  However, this sole act by Dishi, and his limited involvement in Lucky Seven and Mofongo, simply does not support a finding that Dishi is jointly and severally liable as an employer.  Instead, as more fully set forth below, the record shows that Dishi is not an employer under the FLSA.  Likewise, Cabrera is also not an employer under the FLSA, as discussed below, the record shows that Cabrera had even less involvement than Dishi in Lucky Seven and Mofongo.

Under the FLSA, the term "employer" applies to "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  See 29 U.S.C. §§203(a) and (d).  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  See 29 U.S.C. §203(d).  In determining whether an employment relationship exists, the Second Circuit has reasoned that "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'"  Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (quoting Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961).

Thus, to determine when FLSA liability may be imposed on an individual within a company, where the company is indisputably the plaintiff's employer, the economic reality test is applied to make this determination.  To apply the economic reality test, a non-exclusive list of factors is to be considered, including, "whether the alleged employer [i] had the power to hire and fire employees, [ii] supervised and controlled employee work schedules or conditions of

4

employment, [iii] determined the rate and method of payment, and [iv] maintained employment records." Barfield, 537 F.3d at 142 (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984). See also Herman v. RSR Security Services Ltd., 172 F.3d 132 (2d Cir. 1999). No one factor is dispositive, as the test encompasses the totality of the relevant circumstances. Id.

In considering whether an owner who is not fully involved in the day-to-day operation of a business is an employer, such as Dishi and Cabrera, courts in this Circuit are guided by two (2) Second Circuit precedents squarely addressing this issue. These precedents are Herman v. RSR Security Services Ltd., 172 F.3d 132 (2d Cir. 1999) and Irizarry v. Catsimatidis, 722 F.3d 99 (2d Cir. 2013). In applying the economic reality test in RSR, the Second Circuit held that the first three factors of said test were satisfied, and affirmed the District Court's decision concluding that a shareholder was an employer under FLSA in a business that provided security guard services where it was found that the shareholder:

- had some involvement in the day-to-day business operations of which portions were run out of the shareholder's law office;

- some of the employees periodically reported directly to the shareholder and he occasionally gave them instructions;

- the shareholder was viewed by others as having control over the business;

- he had access to bank credit that permitted him to exercise financial control;

- hired managers;

- occasionally assigned guards to work locations;

- directed a colleague to revise the company's employment forms; and

- occasionally signed payroll checks.

In addition, to the economic reality analysis applied in RSR, the Second Circuit in Irizarry considered two additional factors. The first area of inquiry is "the scope of an individual's

5

authority or 'operational control' over a company." <u>Irizarry</u>, 722 F.3d at 106.  As to the first area

of inquiry, the <u>Irizarry</u> Court found that:

> "Evidence that an individual is an owner or officer of a company, or
> otherwise makes corporate decisions that have nothing to do with an
> employee's function, is insufficient to demonstrate 'employer' status.
> Instead, to be an 'employer,' an individual defendant must possess control
> over a company's actual 'operations' in a manner that relates to a plaintiff's
> employment.  It is appropriate, as we implicitly recognized in *RSR*, to
> require some degree of individual involvement in a company in a manner
> that affects employment-related factors such as workplace conditions and
> operations, personnel, or compensation – even if this appears to establish a
> higher threshold for individual liability than for corporate 'employer'
> status."
>
>             \*\*\*
>
> "A person exercises operational control over employees if his or her role
> within the company, and the decisions it entails, directly affect the nature or
> conditions of the employees' employment.

<u>Id.</u> at 109.

The second area of inquiry is "whether the power of the putative individual employer was

'hypothetical' or 'actual'."  <u>Id.</u> at 106.  As the Second Circuit explained in <u>Irizarry</u>, "…an

individual's power over employees is an important and telling factor in the 'economic reality'

test."  Indeed, "[o]wnership, or a stake in a company, is insufficient to establish that an individual

is an 'employer' without some involvement in the company's employment of the employees." <u>Id.</u>

at 111.

In applying the economic reality test and additional factors in <u>Irizarry</u>, the Second Circuit

affirmed the District Court's finding that John Catsimatidis ("Catsimatidis"), the chairman,

president, and CEO of the supermarket chain, Gristede's, was an employer under FLSA.  In

considering the two (2) additional areas of inquiry, the Second Circuit noted that Catsimatidis,

unlike Dishi and Cabrera, was "a hand's-on executive involved in Gristede's banking, financial[s],

real estate, merchandising, governmental relations, and relationships with vendors….” Id. at 112 (internal quotation marks omitted). In addition, the Second Circuit noted that Catsimatidis “exercised influence in specific stores on multiple occasions”, “made regular check-ups on Gristede’s stores”, and “from time to time he would address problems that occurred in individual stores.” Id. at 113 (internal quotation marks omitted). As such, this Circuit concluded that “Catsimatidis had functional control over the enterprise as a whole.” Id. at 116. Also, in applying the economic reality test in Irizarry, the Second Circuit determined that Catsimatidis satisfied two (2) of the factors, to wit: the hiring of managerial employees and overall financial control of the company. Id. at 114-116.

Accordingly, in reviewing the totality of the circumstances in Irizarry, this Circuit concluded that Catsimatidis had functional control over the enterprise as a whole. Id. at 116. Unlike the individual Defendants herein, Dishi and Cabrera, who had far less involvement in the business operations, Catsimatidis was active in running Gristede’s, including contact with individual stores, employees, vendors, and customers. Id. at 116. In addition, Catsimatidis dealt with customer complaints, in-store displays and merchandising, and the promotion of store personnel. Id. at 116. Further, this Circuit found that Catsimatidis satisfied two (2) factors of the economic reality test – the hiring of managerial employees and overall financial control of the company – in that he kept track of payroll as a line item on accounting and as a part of profit and loss; he knew that employees were paid on time; if there was a problem an employee may approach him in the store; setting up a meeting between lower-level managers and an outside payroll company; and stating in open Court that he could shut down the business, declare bankruptcy, as well as provide the personal signature necessary for a bank letter of credit to be issued in favor of Gristede’s. Id. at 115-116.

However, in <u>Irizarry</u>, even though Catsimatidis was substantially involved and actively running Gristedes as noted above, the Second Circuit recognized that the facts made for a close call in determining that Catsimatidis was an employer under the FLSA.  <u>Id.</u> at 116.  In contrast, here, where the individual Defendants had significantly less involvement than in <u>Irizarry</u> or <u>RSR</u>, the R&R relies primarily on Dishi's sole act of firing Plaintiff, as he was suspected of stealing from Lucky Seven, to conclude that Dishi is Plaintiff's employer under the FLSA.  R&R at p. 10.  This sole act by Dishi, along with his limited involvement in Lucky Seven and Mofongo, simply does not support a finding that Dishi is jointly and severally as an employer.  Similarly, Cabrera cannot be found to be an employer under the FLSA as the record shows that he had even less involvement in Lucky Seven and Mofongo than did Dishi.

Based upon the relevant caselaw noted herein, the record clearly shows that Dishi and Cabrera are not Plaintiff's employers under the FLSA.  In fact, Plaintiff testified that Dishi did not supervise his day-to-day activities at either Lucky Seven or Mofongo, nor did Dishi ever direct Plaintiff to perform any work.  See **Exhibit S** ("Plaintiff Tr.) to the Declaration of Eric Zim ("Zim Decl.") dated March 16, 2020 submitted with Defendants' moving papers (hereinafter, the exhibits attached to the Zim Decl. shall be styled as "Zim Decl., **Ex. ___**"), 51:14-16, 52:17-20.  Plaintiff also testified that Dishi did not hire him to work at either Lucky Seven or Mofongo (**Zim Decl., Ex. S**, Plaintiff Tr. 52:25 and 53:2-3).  In addition, Plaintiff testified that Dishi did not assign the hours that Plaintiff worked at either Lucky Seven or Mofongo, nor did Dishi post the Plaintiff's schedule at Lucky Seven or Mofongo (**Zim Decl., Ex. S**, Plaintiff Tr. 53:14-19).

In fact, Plaintiff testified that he never saw Dishi at Mofongo, and very seldomly saw Dishi at Lucky Seven[2] (**Zim Decl., Ex. S**, Plaintiff Tr. 53:20-25 and 54:2-7).  During Dishi's visits to Lucky Seven, Plaintiff testified that Dishi never directed Plaintiff to do anything, nor did Dishi ever have any conversations with him at Lucky Seven (**Zim Decl., Ex. S**, Plaintiff Tr. 54:25 and 55:2-6).  Indeed, Plaintiff testified that he named Dishi in this lawsuit because Dishi accused him of stealing (**Zim Decl., Ex. S**, Plaintiff Tr. 53:4-6).  Thus, it appears that Dishi's only direct involvement with Plaintiff was the firing of Plaintiff (**Zim Decl., Ex. S**, Plaintiff Tr. 10:11-14 and 18).  See also **Exhibit G** ("Dishi Tr.) to the Declaration of David Stein ("Stein Decl.") dated March 16, 2020, submitted with Plaintiff's moving papers, (hereinafter the exhibits attached to Stein Decl. shall be styled as "**Stein Decl., Ex. ___**"), 26:25 and 27:2.

Moreover, Plaintiff testified that the manager of Lucky Seven, Sammy Cabrera, Defendant Cabrera's brother, hired him to work at Lucky Seven, and then, later at Mofongo (**Zim Decl., Ex. S**, Plaintiff Tr. 7:16-25, 8:2-3, 13:4-6, and 13:10).  Plaintiff also testified that he only learned that Dishi was an owner of Lucky Seven through Sammy Cabrera (**Zim Decl., Ex. S**, Plaintiff Tr. 9:4-7).  In addition, Plaintiff testified that Sammy Cabrera advised him of his job duties at Lucky Seven (**Ex. S**, Plaintiff Tr. 21:12-16 and 26:10-19), as well as, Elizabeth and Julio, additional managers at Lucky Seven.  Also, Plaintiff testified that Elizabeth determined Plaintiff's work schedule (**Zim Decl., Ex. S**, Plaintiff Tr. 34:24-25).  Further, Plaintiff testified that he received his pay weekly from Sammy (**Zim Decl., Ex. S**, Plaintiff Tr. 40:4-7).

As the sole owner of Lucky Seven, Dishi does not run the day-to-day operations, which are handled by managers (**Stein Decl., Ex. G**, Dishi Tr 17:18-23).  During the period of time Dishi

---

[2] Plaintiff later estimated that he saw Dishi at Lucky Seven approximately three times a week (**Zim Decl., Ex. S**, Plaintiff Tr. 54:17-19).

was a fifty percent (50%) owner at Lucky Seven, he did not have any responsibilities (**Stein Decl.,**
**Ex. G**, Dishi Tr 18:11-15); and, with the exception of management and Plaintiff, he was not
involved in hiring or firing employees (**Stein Decl., Ex. G**, Dishi Tr 19:7-19 and 21:15-18).  In
addition, Dishi testified that the manager at the restaurant determined the applicable minimum
wage to be paid to regular employees (**Stein Decl., Ex. G**, Dishi Tr. 20:13-25 and 21:2-10).

During the relevant time period[3] – the period when Plaintiff worked for both Lucky Seven
and Mofongo – Dishi was a fifty-one percent (51%) owner of Mofongo, and Cabrera a forty-nine
percent (49%) owner of Mofongo (**Stein Decl., Ex. G**, Dishi Tr 29:9-25).  As the fifty-one percent
(51%) owner of Mofongo, Dishi testified that he does not have any daily responsibilities for the
restaurant, nor does Cabrera (**Stein Decl., Ex. G**, Dishi Tr 30:15-18 and 33:8-11; **Stein Decl., Ex.**
**H**, Cabrera Tr. 14:11-15).  Also, Cabrera testified that he does not do any work for Monfogo
(Cabrera Tr. 14:21-24), and doesn't make any business decisions for Mofongo (**Stein Decl., Ex.**
**H**, Cabrera Tr. 15:3-8).  Notably, Eddy Mourad and Sammy Cabrera run the day-to-day operations
at Mofongo (**Stein Decl., Ex. H**, Cabrera Tr. 18:21-23).

Moreover, the testimony only shows that Dishi may possibly be involved in making major
decisions for Mofongo, such as spending a significant amount of money on advertising or making
major changes, but that he is not actually involved in regular daily, basic things (**Stein Decl., Ex.**
**G**, Dishi Tr. 31:2-12).  Notably, the record is absent as to any showing that Dishi actually made
any major decisions at Mofongo.  In addition, Dishi does not sign checks, nor does Felix Cabrera
(**Stein Decl., Ex. G**, Dishi Tr. 33:4-11).  Further, Dishi does not have an office in either Lucky

---

[3] Although Plaintiff asserts that he began working at Mofongo in 2012, for purposes of the motions for summary
judgment in this case, Plaintiff accepts Defendants' position that he did not begin working at Mofongo until January
2014.  See fn. 3 on p.3 of Plaintiff's Memorandum of Law in Support of Plaintiff's Partial Summary Judgment Motion
(Civil Docket Entry No. 49)

Seven or Mofongo (**Stein Decl., Ex. G**, Dishi Tr. 33:12-34:2), and he does not have keys to the offices located at Lucky Seven or Mofongo, or to these businesses (**Stein Decl., Ex. G**, Dishi Tr. 34:7-12).

Here, the record shows very limited involvement by both Dishi and Cabrera. Thus, under the analysis of <u>RSR</u> and <u>Irizarry</u>, the record does not support a finding that either Dishi or Cabrera is an employer of Plaintiff within the meaning of the FLSA. Accordingly, it was error for the R&R to determine that Dishi should be found to be a jointly and severally liable employer and that a jury could find that Cabrera was an employer as defined by the FLSA

**POINT II**

**R&R WRONGLY CONCLUDED THAT<br>PLAINTIFF WAS NOT PAID OVERTIME**

**A.**   **Plaintiff Was Properly Compensated for the Hours He Worked**

The R&R incorrectly concluded that Plaintiff was not paid overtime in accordance with his hours worked. R&R at p. 16. Based on this error, the R&R recommended that Plaintiff's motion for summary judgment be granted as to liability on his overtime claims under the FLSA and NYLL, and that Defendants' motion for summary judgment be denied on the overtime claims  R&R at p. 16. To reach this mistaken conclusion, it is clear that the R&R completely disregarded key facts in the record and rests on errors of law.

First, it is clear that the R&R completely disregarded all of the payroll records submitted in this matter, including the payroll reports (**Zim Decl., Ex. B and C**), paystubs (**Zim Decl., Ex. O**), weekly time records (**Zim Decl., Ex. D-E and G-N**), and notices and acknowledgement of pay rate and payday ("annual notices") (**Zim Decl., Ex. P**) (collectively, the "payroll records"), showing that Plaintiff's weekly pay was based upon a regular hourly rate of pay and an overtime rate of pay for hours worked in excess of 40 hours per week. Secondly, the R&R noted, and relied

11

in its analysis, that the time sheets differ from the paystubs and neither type of record accurately breaks out overtime hours and overtime rate.  R&R at p. 16.  However, this is simply not relevant to the analysis in this matter.

The R&R mirrors the Plaintiff's argument that the paystubs he received from Defendants failed to accurately reflect that he purportedly worked a regular schedule of 59½ hours each week at Lucky Seven and Mofongo (**Zim Decl., Ex. A, Complaint ¶28**).  As such, Plaintiff maintained that he was not properly compensated for his overtime work since it was not shown in his paystubs. However, even assuming arguendo that Plaintiff worked a combined total of 59½ hours weekly at Lucky Seven and Mofongo, Plaintiff was properly and fully compensated, and is not owed any overtime wages.

In the absence of adequate records, courts apply a burden-shifting approach to determine whether an employee has established that he was underpaid in violation of the FLSA and NYLL. Marcelino v. 374 Food, Inc., 16 Civ. 6287 (KPF), 2018 WL 1517205, at *15 (S.D.N.Y. Mar. 27, 2018).  Garcia v. JonJon Deli Grocery Corp., 13 Civ. 8835 (AT), 2015 WL 4940107, at *4 n.8 (S.D.N.Y. Aug. 11, 2015) ("Courts use the same burden-shifting framework to determine liability for unpaid overtime under the NYLL [and the FLSA].")

Under this framework, an employee has the "burden of prov[ing] that he has in fact performed work for which he was improperly compensated".  Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011).  In order to meet this burden, the employee needs to produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference", which may be met "through estimates based on [the employee's] own recollection". Id.  It is only when the employee makes this showing that "[t]he burden then shifts to the employer to come forward [i] with evidence of the precise amount of work performed or [ii] with evidence

to negative the reasonableness of the inference to be drawn from the employee's evidence." Hernandez v. Jrpac Inc., 14 Civ. 4176 (PAE), 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016) (quoting Anderson v. Mt. Clemens Potter Co., 328 U.S. 680, 687 (1946)).

Here, even assuming arguendo that Plaintiff met his burden under this framework, which then shifted the burden to Defendants, it is clear that Defendants have met their burden with evidence to negate any inference that Plaintiff was improperly compensated by Defendants for the work he performed at Lucky Seven and Mofongo.  Indeed, as noted above, the payroll records, which include weekly time records (**Zim Decl., Ex. D-E** and **G-N**) signed by Plaintiff, clearly set forth Plaintiff's regular hourly pay rate and overtime pay rate during the relevant period, , as follows (**Zim Decl., Ex. B-E** and **G-P**):

- ▪ regular hourly pay rate of $12.50 and overtime pay rate of $18.75 per hour from January 24, 2014 to mid-January 2018; and

- ▪ regular hourly pay rate of $13.00 and overtime pay rate of $19.50 from mid-January 2018 to early-November 2018.

In addition, the annual notices[4] (**Zim Decl., Ex. P**) issued by Lucky Seven and Mofongo were also signed by Plaintiff and state Plaintiff's regular hourly pay rate and overtime pay rate, which are the rates noted above.  Further, the annual notices were written in both English and Plaintiff's primary language of Spanish (**Zim Decl., Ex. P** and **S**, Plaintiff Tr. 4:2-5).

Here, the record shows that Plaintiff was more than fully compensated based upon his regular hourly and overtime pay rates, as he acknowledged that he was paid $1,000 per week by the restaurants during the relevant period as he generally worked the same hours each week (**Zim Decl., Ex. A**, Complaint ¶¶26-27, and 31).  During the period from January 24, 2014 to mid-

---

[4] 2015 annual notice for Lucky Seven is missing and is believed to have been lost in a flood at Lucky Seven – see **Zim Decl., Ex. F**, Brazoban Tr. 15:13-16:11, 34:19-35:10.

January 2018, as per Plaintiff, he worked 59½ hours during those weeks, and thus, was owed $865.63 (regular rate of pay at $12.50 per hour for 40 hours plus overtime rate of pay at $18.75 for 19½ overtime hours) (**Zim Decl., Ex. B-E** and **G-P**), whereas he was paid $1,000.00.  Then, during the period from mid-January 2018 to early-November 2018, as per Plaintiff, he worked 59½ hours during said weeks, and thus, was owed $900.25 (regular rate of pay at $13.00 per hour for 40 hours plus overtime rate of pay at $19.50 for 19½ overtime hours) (**Zim Decl., Ex. B-C, E,** and **N-P**), whereas by Plaintiff's account he was paid $1,000.00.

Also, it is significant to note that the payroll records from mid-January 2018 to early-November 2018 show that Plaintiff was actually paid $1,040.00 per week during this period (see **Zim Decl., Ex. B-C, E,** and **N-P**).  Indeed, this corresponds to the minimum wage increase occurring on or about December 31, 2017.  See NYLL §652(1).  Thus, evidencing that Plaintiff's wages were based upon the prevailing minimum wage and corresponding overtime rate of pay during the applicable time period.

Moreover, Dishi testified that it was the policy to pay employees minimum wage unless a manager received approval from Dishi or another owner to pay a higher wage.  See **Stein Decl., Ex. G**, Dishi Tr. 21:11-14.  Dishi further testified that Sammy Cabrera, a manager and brother of Defendant Cabrera, hired Plaintiff, but did not discuss Plaintiff's salary with Dishi.  See **Stein Decl., Ex. G**, Dishi Tr. 23:24-25, 24:2-4, 49:22-25, and 50:2-3.  Thus, the reasonable inference is that Plaintiff's salary was based upon the applicable minimum wage.

**B.**   **Notwithstanding the above, if Plaintiff's Compensation is Considered a Fixed Weekly Salary, these Payments Comply with the FLSA and NYLL**

Even if Plaintiff's compensation could be considered a fixed weekly salary, such an agreement complies with both the FLSA and NYLL so long as it includes overtime payments.  See Amaya v. Superior Tile and Granite Corp., 10 Civ. 4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y.

14

Jan. 17, 2012) (citing <u>Giles v. City of New York</u>, 41 F. Supp.2d 308, 316-17 (S.D.N.Y. 1999)).

Contrary to Plaintiff's contentions, an agreement for a fixed weekly salary including overtime

compensation for restaurant employees, such as Plaintiff, is permissible under both the FLSA and

NYLL.  In fact, courts in the Second Circuit have evaluated whether such an agreement exists

under the FLSA and NYLL.  See <u>Pineda v. Frisolino, Inc.</u>, 15 Civ. 3774, 2017 WL 3835882 at *11

(S.D.N.Y. Jul. 30, 2018).

"[A]n employer asserting that an employee's weekly salary includes FLSA-required

overtime payments must prove not just that the employee regularly works over 40 hours per week,

but also that the employer and employee contracted for the weekly salary to include the overtime

period."  <u>Giles v. City of New York</u>, 41 F. Supp.2d 308, 317 (S.D.N.Y. 1999).  "There is a

rebuttable presumption that an employer's payment of a weekly salary represents compensation

for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this

presumption with evidence that the employer and employee had an agreement that the employee's

weekly compensation would cover a different number of hours."  <u>Jiao v. Shi Ya Chen</u>, 3 Civ. 165

(DF), 2007 WL 4944767, at *13 (E.D.N.Y. Mar. 30, 2007) (citing <u>Giles</u>, 41 F.Supp.2d at 317).

Typically, "[i]f an employer seeks to pay a non-exempt employee a weekly salary that

includes a premium overtime component calculated at time and one half of an hourly rate, there

must be an express agreement to such an arrangement."  <u>Jacobsen v. Stop & Shop Supermarket

Co.</u>, 2 Civ. 5915, 2003 WL 21136308, at *3 (S.D.N.Y. May 15, 2003).  However, courts have

determined that in a situation where there is no written employment agreement or other written

instrument memorializing the parties' intentions, the court infers the terms of the parties'

agreement from "the entire course of their conduct, based on the testimonial and documentary

evidence in the record." <u>Moon v. Kwon</u>, 248 F.Supp.2d 201, 206 (S.D.N.Y. 2002).  See also <u>Jiao</u>, 2007 WL 4944767, at *13.

Here, if Plaintiff's compensation is considered a fixed weekly salary, this arrangement complies with both the FLSA and NYLL as it certainly included Plaintiff's overtime payments. As noted above, the weekly time records[5] (**Zim Decl., Ex. D-E** and **G-N**) issued to Plaintiff by Lucky Seven and Mofongo were signed by Plaintiff and expressly state that the "payment includes any over time".  See **Zim Decl., Ex. D-E** and **G-N**.  Notably, Plaintiff testified that "they didn't pay me by the hour because I would stay longer.  Indeed, this statement is very telling as it could be interpreted to indicate that Plaintiff understood that he was paid a flat salary which included the payment of his overtime hours worked at the restaurants.  See **Zim Decl., Ex. S**, Plaintiff Tr. 44:2-3.

### C.    <u>R&R Erroneously Concluded that the Weekly Time Records are Inadmissible</u>

The R&R erroneously concluded that the weekly time records are inadmissible hearsay because they were not properly authenticated with an accompanying affidavit.  R&R at p. 15. Based on this error, the R&R concluded that the weekly time records were not properly introduced and may not be relied on in determining this motion.  R&R at p. 15.  However, this was clear error.

To begin, the very case the R&R relies upon, <u>Perpall v. Pavetek Corp.</u>, 12-Civ-0336 (PKC), 2017 WL 115764 (E.D.N.Y. Mar. 27, 2017), does not support its erroneous conclusion.  In <u>Perpall</u>, unlike in this case, the defendants relied on unsworn and uncertified medical records annexed to their attorney's declaration to support their motion for summary judgment.  However, even though the defendants failed to comply with the federal certification requirements for medical records, the

---

[5] It was clear error for the R&R to conclude that the weekly time records are inadmissible hearsay and may not be relied on in determining this motion as discussed herein.  R&R at p. 15.

Perpall Court denied plaintiff's request to exclude them from consideration with respect to defendants' summary judgment motion.  Perpall, 2017 WL 115764, at *7.  Moreover, unlike this case, the issue in Perpall was whether the lack of certification for the medical records made them inadmissible as hearsay, as these records were also not authenticated, and thus, could not alternatively be admitted under the business rule exception to hearsay.  Perpall, 2017 WL 115764 at *8 and 9.

In reaching its conclusion, the Perpall Court reasoned that the medical records were relevant to the issue of causation of plaintiff's claimed injuries.  As such, there is a preference for their admission.  Perpall, 2017 WL 115764 at *8, quoting (Cargill .Inc. v. Sears Petroleum & Transport Corp., 334 F. Supp. 2d 197, 247 (N.D.N.Y. 2004)("Because of the preference to have issues and claims decided on their merits, rather than on the basis of a procedural shortcoming, the exclusion of otherwise relevant evidence on technical grounds is generally not favored, absent compelling circumstances."); and citing (Rodriguez v. Village Green Realty, Inc., 788 F. 3d 31, 47 (2d Cir. 2015)(citing Sony Corp. v. Elm State Elecs., Inc., 800 F. 2d 317, 320 (2d Cir. 1986)(describing the Second Circuit's "strong preference for resolution of disputes on their merits" and "preference for resolving doubts in favor of a trial on the merits.").

Also, the Perpall Court noted that a review of the medical records submitted by defendants reveals nothing that would indicate a lack of trustworthiness; and further noted that their appearance, contents, and substance are what one would expect of such records and support defendants' claim that they are what they appear to be.  Perpall, 2017 WL 115764 at *8.  The Perpall Court additionally noted that "[p]laintiffs have no reason to question the authenticity of the medical records submitted by [d]efendants."  Perpall, 2017 WL 115764 at *9.  Likewise, here, there is no reason to question the authenticity of the weekly time records, especially where they

were signed by Plaintiff and select copies of same were submitted by Plaintiff with his motion for summary judgment (**Stein Dec., Ex. I**).

Further, the Perpall Court noted that "it is well-established that even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial."  Perpall, 2017 WL 115764 at *9 (citing Parks v. Blanchette, 144 F. Supp. 3d 282, 293 (D. Conn. 2015) quoting Bill Salter Advert., Inc. v. City of Brewton, Ala., 07-0071-WS-B, 2008 WL 1823237, at *4 (S.D. Ala. Jan. 18, 2008); and citing Fraser v. Goodale, 342 F. 3d 1032, 1036 (9th Cir. 2003)("At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents"), cert. denied, 541 U.S. 937 (2004)).   As such, the Perpall Court concluded that "there is nothing to suggest that [d]efendants would not be able to obtain for trial the necessary authenticating testimony or FRE 902(11) certification to satisfy FRE 803(6).  Perpall, 2017 WL 115764 at *9.

Accordingly, it was clear error for the R&R to conclude that the weekly time records are inadmissible as it may reasonably be reduced to admissible form at trial with the proper authenticating testimony.

Notwithstanding that the R&R misinterpreted and misapplied Perpall, an affidavit accompanying the weekly time records for authentication purposes is simply not necessary.  Here, these records were signed by Plaintiff and select copies of same were submitted with Plaintiff's motion for summary judgment (**Stein Dec., Ex. I**).  In addition, submitted with Defendants' motion for summary judgment is the deposition transcript of Eddy Mourad (**Zim Decl., Ex. R**, Mourad Tr. 42:8-45:5), an office manager at Lucky Seven and Mofongo during the relevant time.  Mr. Mourad's deposition testimony certainly describes the weekly time record as a business record. Further, submitted with Defendants' motion for summary judgment is the deposition of Tatiana

Brazoban (**Zim Decl., Ex. F**, Brazoban Tr. 41:23-43:19), a bookkeeper at Lucky Seven, also describes the weekly time record as a business record.

Based upon the foregoing, it was error for the R&R not to consider the weekly time records submitted by Defendants.

**POINT III**

**R&R INCORRECTLY CONCLUDED DEFENDANTS' SUMMARY JUDGMENT BE DENIED ON PLAINTIFF'S "SPREAD OF HOURS" CLAIM**

The R&R incorrectly concluded that Defendants' motion for summary judgment be denied with respect to Plaintiff's "spread of hours" claim.  R&R at p. 17.

Here, Plaintiff is not owed any "spread of hours" compensation as this has already been included in Plaintiff's compensation.  An employee is entitled to one extra hour of pay at the minimum wage rate for any day for which the "spread of hours" (the interval between the beginning and end of an employee's workday) exceeds 10 hours.  12 N.Y.C.R.R. §146-1.6. Plaintiff maintains that he worked two (2) shifts per week during the relevant period that lasted in excess of ten (10) hours from start to finish for which he is due "spread of hours" compensation (**Zim Decl., Ex. A,** Complaint ¶38).

However, Plaintiff's "spread of hours" claim is simply not supported by the record.  Here, by Plaintiff's own admission he was paid $1,000.00 for purportedly working 59½ hours each week during the relevant time period (**Zim Decl., Ex. A,**Complaint ¶¶28 and 31).  The "spread of hours" compensation for each such day during the relevant period is based upon the following rates:

- ▪   Hourly minimum wage on and after December 31, 2013:  $8.00;
- ▪   Hourly minimum wage on and after December 31, 2014:  $8.75;
- ▪   Hourly minimum wage on and after December 31, 2015:  $9.00;
- ▪   Hourly minimum wage on and after December 31, 2016:  $11.00; and
- ▪   Hourly minimum wage on and after December 31, 2017:  $13.00.

19

See NYLL §652(1).

During the period from January 24, 2014 to mid-January 2018, Plaintiff maintains that he worked 59½ hours during those weeks. As such, he was owed $865.63 (regular rate of pay at $12.50 per hour for 40 hours plus overtime rate of $18.75 for 19½ overtime hours). Accordingly, the total compensation due Plaintiff during this period is as follows (see **Zim Decl., Ex. B-E** and **G-P**):

- 2 shifts per week at the minimum wage rate of $8.00 per hour from January 24, 2014 through December 30, 2014 is $16.00 plus $865.63, which totals $881.63;

- 2 shifts per week at the minimum wage rate of $8.75 per hour from December 31, 2014 through December 30, 2015 is $17.50 plus $865.63, which totals $883.13;

- 2 shifts per week at the minimum wage rate of $9.00 per hour from December 31, 2015 through December 30, 2016 is $18.00 plus $865.63, which totals $883.63;

- 2 shifts per week at the minimum wage rate of $11.00 per hour from December 31, 2016 through December 30, 2017 is $22.00 plus $865.63, which totals $887.63; and

- 2 shifts per week at the minimum wage rate of $13.00 per hour from December 31, 2017 through mid-January 2018 is $26.00 plus $865.63, which totals $891.63.

Moreover, during the period from mid-January 2018 to early-November 2018, Plaintiff also maintains that he worked 59½ hours each week. Accordingly, he was owed $900.25 (regular rate of pay at $13.00 per hour for 40 hours plus overtime rate of $19.50 for 19½ overtime hours). Thus, the total compensation due Plaintiff during this period is as follows (see **Zim Decl., Ex. B-C, E,** and **N-P**):

- 2 shifts per week at the minimum wage rate of $13.00 per hour from mid-January 2018 through November 2018 is $26.00 plus $900.25, which totals $926.25.

Based upon the foregoing, it is clear that Plaintiff received "spread of hours" compensation, and thus, there is no such compensation due Plaintiff.

## POINT IV

### R&R INCORRECTLY CONCLUDED DEFENDANTS ARE LIABLE UNDER THE WAGE THEFT PREVENTION ACT

The R&R incorrectly concluded that Defendants are liable under the WTPA for maintaining inaccurate wage statements even though the Defendants substantially complied with the requirements of NYLL §195(3) as discussed below.  R&R at p. 18-19.

Here, the record shows that the wage statements (**Zim Decl., Ex. O**) provided by Defendants to Plaintiff substantially complied with the requirements of NYLL §195(3) in that they listed the following:

- dates of work covered by that payment of wages;
- employee's name;
- employer's name;
- address and phone number of employer;
- rate of pay;
- indicated that Plaintiff was paid hourly;
- gross wages;
- net wages; and
- deductions

"Most existing cases holding employers liable for failing to satisfy the requirements of NYLL §195(3) have done so where the employer has furnished no wage statements at all." Severino v. 436 West L.L.C., 13 Civ. 3096 (VSB), 2015 WL 12559893, at *9 (S.D.N.Y. Mar. 19, 2015).  See also Rojas v. Splendor Landscape Designs Ltd., 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) ("Typically, a WTPA claim involves an employer's failure to provide its employees with a wage statement altogether.").  However, this is not the case here.  It is undisputed that Defendants did provide wage statements, as required under NYLL §195(3).  It is noted that "[i]t may be that an employer could raise a substantial-compliance argument such that the alleged errors in the contents of the wage-statements furnished to Plaintiff need not lead to an automatic wage-

statement violation." <u>Chocolatl v. Rendezous Café, Inc.</u>, 18 Civ. 3372 (CBA)(VMS), 2019 WL 5694104, at *12, n. 16 (E.D.N.Y. Aug. 16, 2019).

In reaching its conclusion, the R&R relied upon <u>Rojas</u> to determine that Defendants are liable under the WTPA. <u>Rojas v. Splendor Landscape Designs Ltd.</u>, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017). In <u>Rojas</u>, the Court cited to and relied upon <u>Copper v. Calvary Staffing, LLC</u>, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015), which concluded that "where defendants maintained inaccurate time records and paid plaintiffs according to those inaccurate time records, rather than the hours worked, a violation of the WTPA has been adequately pled." <u>Rojas</u>, 268 F. Supp. 3d at 412. In contrast, here, it may only be found that the wage statements did not accurately reflect all of the hours worked by Plaintiff, not that Plaintiff was inadequately or improperly paid based upon this inaccuracy.

Accordingly, since the wage statements provided by Defendants to Plaintiff substantially complied with the requirements of NYLL §195(3), it was incorrect for the R&R to conclude that Defendants violated the wage statement provision under NYLL §195(3).

**POINT V**

> **R&R INCORRECTLY CONCLUDED PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES, PREJUDGMENT INTEREST, AND ATTORNEYS' FEES**

The R&R incorrectly concluded that Defendants are liable to Plaintiff for liquidated damages, prejudgment interest, and attorneys' fees. R&R at p. 19-21.

Here, these additional remedies cannot be awarded where Defendants have not violated the overtime payment provisions of the FLSA and NYLL. Under both the FLSA and NYLL, an employer can only be liable for liquidated damages where it has violated the minimum wage or overtime requirements under said laws. See 29 U.S.C. §216(b) and NYLL §§198(1-a) and 663(1).

22

As set forth herein, Plaintiff was paid overtime wages, and thus, Defendants are not in violation of these requirements under the FLSA and NYLL.  Accordingly, Plaintiff is not entitled to liquidated damages.

Likewise, the Plaintiff is not entitled to pre-judgment interest on his NYLL claims as he has been properly paid both overtime and "spread of hours" compensation.  Notwithstanding same, where a plaintiff has received an award of federal liquidated damages, he would only be entitled to an award of pre-judgment interest on unpaid wages and "spread of hours" pay for which liquidated damages pursuant to the FLSA were not assessed.  Maldonado v. La Nueva Rampa, 10 Civ. 8195 (LLS)(JLC), 2012 WL 1669341, at *10 (S.D.N.Y. May 14, 2012) (quoting Santillan v. Henao, 822 F.Supp.2d 284, 298 (E.D.N.Y. Sept. 30, 2011)).  Accordingly, if there somehow was an award of pre-judgment interest to Plaintiff, it would be limited to any "spread of hours" determined to be owed and to unpaid wages for which no federal liquidated damages were awarded.  See Maldonado, 2012 WL 1669341, at *10.

Similarly, Plaintiff is not entitled to attorneys' fees as he cannot prevail on his claims herein.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court rejects those portions of the R&R that Defendants have submitted objections.

Dated:      New York, New York
            August 14, 2020

                                    HORWITZ & ZIM LAW GROUP, P.C.
                                    *Attorneys for Defendants*
                                    260 Madison Avenue, 16th Floor
                                    New York, New York 10016
                                    (212) 644-1857 – telephone

                                    /s/ *Eric M. Zim*
                                    Eric M. Zim, Esq.

23

To:   <u>By ECF</u>
David Stein, Esq.
*Attorney for Plaintiff*