UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JESUS BRITO,

Plaintiff,

-v-

LUCKY SEVEN RESTAURANT & BAR, LLC, D/B/A
LUCKY 7 TAPAS BAR, LA CASA DEL MOFONGO
INC., FELIX CABRERA, AVI DISHI, AND JOHN
DOES #1-10,

Defendants.

---

19 Civ. 3876 (PAE) (KHP)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Jesus Brito is a current employee of La Casa Del Mofongo, Inc. ("Mofongo")

and a former employee of Lucky Seven Restaurant & Bar, LLC, d/b/a Lucky 7 Tapas Bar

("Lucky Seven"). Brito brings claims against Mofongo, Lucky Seven, Avi Dishi ("Dishi"), Felix

Cabrera ("Cabrera"), and other owners, officers, directors, members and/or managing agents of

Lucky Seven and Mofongo ("John Does #1-10") for violation of the overtime provisions of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. ¶ 201 *et seq.*, and the New York Labor Law

("NYLL"), N.Y. Lab. Law § 605 *et seq.*, by failing to pay him overtime. Brito claims that

defendants violated the NYLL's spread of hours provisions by failing to pay spread of hours

wages on days that Brito worked more than 10 hours. Brito also alleges that defendants violated

the Wage Theft Prevention Act ("WTPA"), NYLL § 195(3), by failing to provide him with

compliant weekly wage statements.

Before the Court is the July 31, 2020 Report and Recommendation of the Honorable

Katharine H. Parker, United States Magistrate Judge, recommending that the Court deny

defendants' motion for summary judgment and grant in part and deny in part Brito's partial

motion for summary judgment, Dkt. 58 ("Report"), as well as defendants' Objections to the Report, Dkt. 59 ("Def. Obj."), and Brito's Response to those Objections, Dkt. 131 ("Pl. Resp.").

For the following reasons, the Court adopts the Report in principal part but not wholly. The Court adopts the Report in: (1) granting Brito's motion for summary judgment as to whether Dishi was Brito's employer within the meaning of the FLSA and NYLL; (2) denying Brito's motion for summary judgment as to whether Cabrera was Brito's employer within the meaning of the FLSA and NYLL; (3) granting Brito's motion for summary judgment as to whether Lucky Seven and Mofongo are Brito's joint employers; (4) granting Brito's partial motion and denying defendants' motion for summary judgment as to defendants' liability on Brito's unpaid overtime claims under the FLSA and NYLL; (5) denying both sides' motions for summary judgment as to liability on the spread of hours claim; (6) granting Brito's motion and denying defendants' motion as to liability for statutory damages under the WTPA; (7) granting Brito's partial motion and denying defendants' motion as to liability for prejudgment interest under the NYLL for the unpaid overtime claims; and (8) granting Brito's partial motion and denying defendants' motion for summary judgment as to liability for attorney's fees.

However, the Court departs from the Report in denying Brito's motion for summary judgment as to liability for liquidated damages, and prejudgment interest, on the spread of hours claim.  The Court also modifies the Report in that the Court will not exclude the timesheets as hearsay evidence for purposes of the cross-motions.

I.    **Background**

A.    **Factual Background**[1]

The Court adopts the Report's helpful account of the facts, to which neither party objects. *See* Report at 2–5.  The following summary sets forth the facts most relevant here.  These facts, unless otherwise indicated, are undisputed.

Lucky Seven and Mofongo are restaurants located next to one another on Saint Nicholas Avenue in New York City.  *See* Def. 56.1 ¶¶ 2–3; Brito Decl. ¶¶ 5–6.  Brito is a current employee of Mofongo and a former employee of Lucky Seven.  Def. 56.1 ¶ 2.

In 2011, Samuel Cabrera ("Sammy Cabrera"), the general manager of Lucky Seven, hired Brito to work at Lucky Seven.  *See* Pl. 56.1 ¶ 33.  After he had worked for Lucky Seven for some time, Brito began working for Mofongo as well.  The parties disagree as to when Brito began working for Mofongo.  *Compare* Def. 56.1 ¶ 5 (contending that Brito began working for

---

[1] This factual account draws from the parties' submissions in support of and in opposition to defendants' motion for summary judgment, including defendants' Local Rule 56.1 statement, Dkt. 44 ("Def. 56.1"), plaintiff's Local Rule 56.1 response and counter-statement, Dkt. 55 ("Pl. Counter 56.1"), and the declaration (and accompanying exhibits) of Eric M. Zim, Dkt. 45 ("Zim Decl."), and from the parties' submissions in support of and in opposition to plaintiff's partial motion for summary judgment, including plaintiff's Local Rule 56.1 statement, Dkt. 47 ("Pl. 56.1"), defendants' Local Rule 56.1 response and counter-statement, Dkt. 54 ("Def. Counter 56.1"), and the declarations (and accompanying exhibits) of David Stein, Dkt. 48 ("Stein Decl.") and Jesus Brito, Stein Decl., Ex. A ("Brito Decl.").

Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein. Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and are denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

Mofongo in 2014), *and* Zim Decl., Ex. C (Mofongo payroll report for Brito beginning in 2014),
*with* Pl. Counter 56.1 ¶ 5 (contending that Brito began working at Mofongo in 2012).  Brito
worked for Lucky Seven and Mofongo as a stocker, cleaner, and maintenance person.  *See* Def.
56.1 ¶ 6.  He also was tasked with going to the market to buy supplies for both restaurants.  *Id.*
In November 2018, Brito was terminated from Lucky Seven; he continues to work for Mofongo.
*See* Def. Counter 56.1 ¶¶ 40–41.  Dishi played a role in Brito's termination.  *See* Brito Decl.
¶ 15; Stein Decl., Ex. G ("Dishi Tr.") at 26–27; Def. Counter 56.1 ¶ 41.

Until about 2018, Dishi owned 50% of Lucky Seven; in 2018, he became sole owner.
*See* Pl. 56.1 ¶ 10.  When he owned 50%, Dishi hired managers and delegated responsibility for
hiring employees to those managers.  *See* Dishi Tr. at 18–21.  Those managers, however,
required Dishi's authorization to pay any employee more than minimum wage.  *See id.* at 21.
Cabrera's ownership in and control over Lucky Seven are in dispute.  Dishi testified that, prior to
2018, Cabrera owned 50% of Lucky Seven.  *See id.* at 12–13.  He also testified that Cabrera may
have hired managers for Lucky Seven.  *See id.* at 18–25.  Cabrera denied ever owning any part of
Lucky Seven or having participated in its management.  *See* Stein Decl., Ex. H ("Cabrera Tr.")
at 12–13.

Dishi currently owns 51% of Mofongo, and Cabrera owns 49%.  *See* Dishi Tr. at 29;
Cabrera Tr. at 13.  Dishi makes major business decisions for Mofongo.  *See* Dishi Tr. at 29–31.
Cabrera claims that he does not.  *See* Cabrera Tr. at 13–15.  Dishi has authority to sign checks on
behalf of Lucky Seven and Mofongo, although he disputes that he does so.  *See* Dishi Tr. at 16, 33.

Sammy Cabrera ran both Lucky Seven and Mofongo as general manager.  *See id.* at 23–24;
Def. Counter 56.1 ¶ 24.  Eddie Mourad, Mofongo's current office manager, also simultaneously

worked as office manager for Lucky Seven for a period.  *See* Dishi Tr. at 36–37; Stein Decl., Ex. F ("Mourad Tr.") at 9–13.

Neither Lucky Seven nor Mofongo requested that Brito track or report the number of hours he worked.  Brito Decl. ¶¶ 26–27.  Brito did not record his time worked at either restaurant.  *See* Pl. 56.1 ¶ 46; Def. Counter 56.1 ¶ 46 (disputing Brito's schedule but not disputing that he did not track his hours).  Lucky Seven's records for Brito were destroyed in a flood.  *See* Stein Decl., Ex. E ("Brazoban Tr.") at 15–16, 34–35.

Each week, while working at both restaurants, Brito received a check from each restaurant and some payment in cash.  *See* Brito Decl. ¶¶ 32–34; Brazoban Tr. at 37; Pl. 56.1 ¶¶ 49–50; Def. Counter 56.1 ¶¶ 49–50.  Brito received $1,000 per week for his aggregate work at both restaurants.  *See* Pl. 56.1 ¶ 52; Def. Counter 56.1 ¶ 52 (disputing that Brito received a weekly salary but not disputing that he received $1,000 per week).  The parties dispute the nature of these payments.  Brito argues that he was paid on a salary basis at a fixed rate of $1,000 per week; defendants argue that he was paid as an hourly employee.  *See* Pl. 56.1 ¶ 52; Def. Counter 56.1 ¶ 52.  The parties also dispute how frequently Brito worked more than 40 hours per week and whether he received overtime premiums for any hours in excess of 40 hours per week.  *See* Pl. 56.1 ¶¶ 66–67; Def. Counter 56.1 ¶¶ 66–67.  Finally, the parties dispute whether Brito received spread of hours pay for days that he worked longer than 10 hours.  *See* Pl. 56.1 ¶ 68; Def. Counter 56.1 ¶ 68.

Each check that Brito received included a paystub.  *See* Pl. 56.1 ¶ 54; Def. Counter 56.1 ¶ 54.  These paystubs inaccurately state that each week, Brito worked exactly 28 hours at each restaurant.  *See* Brito Decl. ¶¶ 33, 35; Brazoban Tr. at 46–50; *see also* Zim Decl., Ex. O (Brito's pay stubs from 2017).  On some weeks, when Lucky Seven and Mofongo paid him by check,

Brito signed a "weekly time record" ("timesheet") that reflects Brito working exactly 40 hours per week at each restaurant, or 80 hours in total, but zero hours of overtime.  *See* Pl. 56.1 ¶ 58; Def. Counter 56.1 ¶ 58; Zim Decl., Exs. D–E, G–N.

## B.   Procedural History

On May 1, 2019, Brito filed the Complaint.  Dkt. 1 ("Compl.").  On June 17, 2019, the defendants answered.  Dkt. 21.  After discovery, on March 17, 2020, defendants filed a motion for summary judgment.  *See* Dkt. 42.  On the same day, Brito filed a partial motion for summary judgment as to liability only.  *See* Dkt. 46.  On July 16, 2020, defendants filed an opposition to Brito's partial motion for summary judgment, Dkt. 56 ("Def. Opp'n"), and Brito filed an opposition to defendants' motion for summary judgment, Dkt. 57 ("Pl. Opp'n").

On July 31, 2020, Judge Parker filed the Report.  On August 14, 2020, defendants filed Objections to the Report.  Def. Obj.  On August 29, 2020, Brito filed his Response.  Pl. Resp.

## II.   Applicable Legal Standards

## A.   Report and Recommendation

In reviewing a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  To accept the portions of a report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record."  *Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)).  When a timely and specific objection has been made, the court is obligated to review the contested issues *de novo*.  *See id.*; *see also* Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the report and recommendation strictly for clear error.  *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH) (GWG), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012); *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases).  Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011).

### B.    Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

The same standard applies to cross-motions for summary judgment. *See Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). However, even where, as here, both parties assert that there are no genuine issues of material fact, the court need not enter judgment for either party. *See id.* "But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them together." *ExteNet Sys., Inc. v. Village of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019).

## III.   Discussion

Defendants object to five aspects of the Report: (1) its findings that Dishi was Brito's employer and that a reasonable juror could conclude that Cabrera was Brito's employer; (2) its recommendation that Brito's partial motion as to liability on the FLSA and NYLL overtime claims be granted and defendants' motion on the same be denied; (3) its recommendation that defendants' motion for summary judgment as to the spread of hours claim be denied; (4) its recommendation that Brito's partial motion as to liability on the WTPA claim be granted and defendants' motion on the same be denied; and (5) its recommendation that defendants be found liable to Brito for liquidated damages, prejudgment interest, and attorney's fees.

The Court examines each of these objections in turn.

## A.     Lucky Seven's and Mofongo's Status as Joint Employers

Defendants do not object to the Report's conclusion that Lucky Seven and Mofongo were Brito's joint employers under the FLSA and the NYLL, and therefore are jointly and severally liable for any FLSA or NYLL violations.  Accordingly, the Court reviews this conclusion for clear error.  *See King*, 2009 WL 2001439, at *4.

Careful review of Judge Parker's well-reasoned analysis does not reveal any facial error in that conclusion.  *See* Report at 11–14.  Accordingly, the Court adopts the Report's recommendation that Lucky Seven and Mofongo were Brito's joint employers during the period he worked for both simultaneously.

## B.     Dishi's and Cabrera's Status as Brito's Employers

Brito has moved for summary judgment as to whether Dishi and Cabrera are Brito's employers under the FLSA and the NYLL.[2]  Although agreeing that Lucky Seven and Mofongo were Brito's employers for purposes of the FLSA and the NYLL, the parties dispute whether Dishi and Cabrera, in their individual capacities, were also Brito's employers.  The Report found that Dishi was such, but denied Brito's motion as to Cabrera, finding genuine issues of material fact as to the nature and degree of Cabrera's actions.  *See* Report at 8–11.  Defendants object to the conclusion that Dishi is an employer and to the conclusion that the facts could permit a jury to find Cabrera an employer.  They argue that the Report misapplied the law addressing individual liability.  *See* Def. Obj. at 3.  Accordingly, *de novo* review is appropriate.

---

[2] As Brito notes in his Responses to defendants' Objections, although the Report makes a recommendation as to defendants' motion for summary judgment on individual liability for Dishi and Cabrera, defendants did not move for summary judgment as to that issue.  *See* Pl. Resp. at 5 n.1.  *See generally* Dkt. 43 ("Def. Mem.").  Defendants' only arguments as to their employer status were made in opposition to Brito's partial motion for summary judgment.  *See* Def. Opp'n at 12–17.  Accordingly, the only summary judgment motion on this issue is Brito's partial motion.

To be liable under the FLSA, an individual must be an employer.  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The FLSA definition thus includes the "very word it seeks to define": employer.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013).  The Supreme Court, guided by the "striking breadth" of the FLSA's definition of "employ," has held that the "determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'"  *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).  This "economic reality" test applies to whether workers qualify as "employees" and to whether managers or owners qualify as their "employers."  *See Irizarry*, 722 F.3d at 104.  The "economic reality" test factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  No one factor is dispositive.  *See id.*

The standard under the NYLL is "is nearly identical to that of the FLSA."  *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019).  Although the Second Circuit has not resolved whether the tests are the same, "courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA."  *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (quotations and citation omitted).  The Court analyzes the employer issues presented here under both statutes together.

1.      **Dishi**

Defendants contend that the Report relied solely on Dishi's ownership stake and his having fired Brito. *See* Def. Obj. at 4.  That is wrong.  It is undisputed that until about 2018, Dishi owned 50% of Lucky Seven; then he became the sole owner. *See* Pl. 56.1 ¶ 10; Def. Counter 56.1 ¶ 10.  As defendants note, mere ownership alone is insufficient to render an individual an employer. *See Irizarry*, 722 F.3d at 107.  But the undisputed facts, on which the Report drew, also illustrate that Dishi had sufficient operational control of the restaurants to qualify as an employer, and such control, as the Second Circuit held in *Irizarry*, is relevant to an individual's employer status. *See id.* at 106–07.  Indeed here, as in *Irizarry*, "'operational control' is at the heart of this case." *Id.* at 107.  When Dishi owned 50% of Lucky Seven, he hired managers and delegated to them responsibility for hiring employees. *See* Dishi Tr. at 18–21. Even where hiring "involve[s] mainly managerial staff, the fact that [Dishi] hired individuals who were in charge of the [employees] is a strong indication of control." *RSR*, 172 F.3d at 140. Moreover, although Dishi did not set wages for individual employees, Cabrera, to whom this task was delegated, needed Dishi's permission to pay any employee more than minimum wage. *See* Dishi Tr. at 21.  Finally, Dishi played a role in Brito's termination from Lucky Seven. *See* Brito Decl. ¶ 15; Dishi Tr. at 26–27.

With respect to Mofongo, the employer question is a closer call.  However, Dishi made major business decisions for Mofongo. *See* Dishi Tr. at 29–31.  He, alongside the managers, had (and has) the authority to sign checks on its behalf. *Id.* at 33.  Although Dishi was not specifically asked about his hiring of personnel for Mofongo, it is undisputed that Sammy Cabrera ran Lucky Seven and Mofongo as their general manager. *See id.* at 23–24.  Eddie Mourad, the current office manager of Mofongo, has also simultaneously worked as the office

manager for Lucky Seven for a period.  *See id.* at 36–37; *see* Mourad Tr. at 9, 11–13.

Accordingly, Dishi necessarily had a role in hiring managers for Mofongo as well.

In the end, defendants have not raised a genuine issue of material fact as to whether Dishi

is an employer.  Accordingly, the Court adopts the Report's recommendation to grant Brito's

summary judgment motion as to Dishi, whom, the Court holds, is an employer, and hence liable

to Brito, jointly and severally with others held employers, to the extent of any employer liability.

### 2.      Cabrera

As the Report concluded, there are genuine disputes of fact as to Cabrera's involvement

with both restaurants.  There is conflicting evidence as to whether Cabrera ever owned any part

of Lucky Seven, *compare* Dishi Tr. at 12–13, *with* Cabrera Tr. at 12–13, and as to the extent to

which Cabrera participated in the management of either restaurant, *compare* Dishi Tr. at 18–25,

*with* Cabrera Tr. at 12–15.  Accordingly, reasonable minds could differ as to whether the

economic-reality test factors favor a finding that Cabrera was an employer at either restaurant.

The Court therefore adopts the Report's recommendation to deny Brito's motion as to Cabrera.

### C.      Liability for Unpaid Overtime Under FLSA and NYLL

Defendants move for summary judgment on Brito's unpaid overtime claims under the

FLSA and the NYLL.  *See* Def. Mem. at 5–8.  The Report recommended that defendants' motion

for summary judgment be denied and that Brito's, as to liability on these claims, be granted.  *See*

Report at 16.  Defendants argue that the Report erred in disregarding Brito's weekly timesheets,

finding that Brito received a weekly salary, and finding that his salary did not include overtime.

*See* Def. Obj. at 11–19.  Defendants' objections largely restate the arguments in their brief in

support of their motion to dismiss, *see* Def. Mem. at 5–8, and their opposition to Brito's partial

motion for summary judgment, *see* Def. Opp'n at 2–7.  Accordingly, clear error review would be

appropriate.  Nonetheless, the Court has reviewed these questions *de novo*.  Although the Court's

analysis differs slightly from the Report's as to whether any aspect of Brito's weekly timesheets can be considered on summary judgment, the Court adopts the Report's recommendation to grant Brito's partial motion for summary judgment as to liability for the overtime claims, and deny defendants' motion as to the same.

### 1.    Authenticity/Admissibility of the Timesheets

Brito's weekly timesheets set out his purported hours and pay rates and state that his "payments include all overtime." *See* Zim Decl., Exs. D–E, G–N.  The Report declined to consider these timesheets at all, on the ground that defendants had not properly authenticated them as business records.  *See* Report at 15.  As the Report noted, defendants submitted in support of the timesheets only an attorney declaration, which did not attest to any personal knowledge as to them.  On this basis, the Report found these timesheets not cognizable on the motions for summary judgment.  *See id.*  And in objecting to the Report, defendants have not, even belatedly, come forward with a custodian's affidavit attesting to the requirements of the business records hearsay exception.  *See* Fed. R. Civ. P. 803(6).  Brito accordingly argues that the timesheets' admissibility at trial has not been established, such that they should be disregarded at summary judgment.  *See* Pl. Resp. at 5–8.

Had this issue arisen before the 2010 amendments to the Federal Rules of Civil Procedure, the timesheets clearly would not have been properly considered on summary judgment.  Rule 56's authentication requirements for documents relied upon in a summary judgment motion were then strict and technical.  To rely on a document as a business record at summary judgment, the relevant custodian with personal knowledge was required to "make[] a declaration tracking exactly the language of Rule 803(6)."  *See Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F. Supp. 2d 373, 379 (S.D.N.Y. 2004).

However, the 2010 amendments removed the "unequivocal requirement" that documents submitted in connection with summary judgment be authenticated. *Archie MD, Inc. v. Elsevier, Inc.*, No. 16 Civ. 6614 (JSR), 2017 WL 3421167, at *1 n.2 (S.D.N.Y. Mar. 13, 2017) (quotations and citation omitted). Rule 56 as amended requires that supporting documents "be in a form that, if authenticated, could be admissible at trial." *Id.* (citing Fed. R. Civ. P. 56(c)(2)); *see also Parks v. Blanchette*, 144 F. Supp. 3d 282, 299 (D. Conn. 2015) ("[Rule 56(c)(2)] simply means that the evidence must be capable of presentation in admissible form at the time of trial."). A party may object that the "material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The admissibility question therefore became not whether defendants have presented the timesheets in an admissible form, but whether they are capable of being presented in such a form at trial.

There is enough in the present record for defendants to clear this bar, at least as to some limited dimensions of the timesheets. Brito's deposition testimony supports that such timesheets were regularly put before him and signed. At Brito's deposition, several exemplars of such timesheets were put before him. And indeed, Brito attaches some of those to his partial summary judgment motion. *See* Stein Decl., Ex. I (attaching weekly time reports stamped as Exhibits C–E, H–L in Brito's deposition); *see also* Stein Decl. ¶ 11. Questioned about the timesheets put before him at his deposition, Brito admitted that he had contemporaneously signed each. *See* Zim Decl., Ex. S ("Brito Tr.") at 46–51. To be sure, on summary judgment, defendants have submitted many more timesheets than the handful put before Brito at his deposition. *See* Zim Decl., Exs. D–E, G–N. But these timesheets, in form, are nearly identical to those authenticated by Brito at his deposition. There is no reason to treat these timesheets as not having been created on or about the time dated, and signed by Brito in the course of receiving his pay, as opposed to

having been fabricated after the fact.  *See Perpall v. Pavetek Corp.*, No. 12 Civ. 0336 (PKC), 2017 WL 1155764, at *9 (E.D.N.Y. Mar. 27, 2017) ("Plaintiffs have offered no reason to question the authenticity of the [records] submitted by Defendants.").  And although defendants have not included declarations from these persons, defendants have now identified two witnesses who appear to have personal knowledge of Brito's regularly signing such timesheets: Eddy Mourad, the office manager at Lucky Seven and Mofongo during the relevant period, and Tatiana Brazoban, the bookkeeper at Lucky Seven.  *See* Def. Obj. at 18–19.  The Court will, therefore, consider the timesheets on summary judgment, as reflecting the documents that Brito signed each week in connection with his receipt of pay.  As such, they are usable to establish the fact and timing of wage payments to Brito.

However, there is no basis on which treat any of the factual representations contained in the timesheets—including, importantly, Brito's hours or the statement on the timesheets that Brito's "payments include any over time"—as accurate.  Defendants tellingly have not claimed that the hours reflected on those timesheets, which mechanistically list the same hours worked each week, are accurate, let alone pointed to a witness who would attest to their accuracy as to this particular.  And Brito, although identifying his signature on the timesheets put before him at his deposition, disputed that these accurately reflected his hours.  On the contrary, he testified that he signed them believing that he had to do so to get his paycheck.  *See* Brito Tr. at 46–51.  Brito today forcefully disputes that the timesheets are accurate as to his hours, *see* Pl. Resp. at 7,[3] and therefore, implicitly, as to the representation that "payments include any over time."  Brito's

---

[3] Brito attested in his Local Rule 56.1 statement that he had signed the timesheets put before him "in order to get his money," while distancing himself from the representations on the timesheets as to his hours worked, stating that he had not meant, by signing, to endorse those statements as true.  Pl. 56.1 ¶ 58.

testimony therefore would not satisfy the requirements of the business records exception, which requires, *inter alia*, that the methods of regular creation of a business have indicia of trustworthiness. *See* Fed. R. Evid. 803(6)(D)–(E). It would merely buttress the aspect of that exception requiring the regular and contemporaneous creation of the records. That the regularly created timesheets were created under circumstances indicative of their accuracy would have to be attested to by a qualified records custodian. And defendants have not so much as proffered that such a witness exists, or indeed stood behind the statements on the timesheets as to Brito's actual hours worked.

The Court accordingly will consider the timesheets for a discrete purpose: to reflect that Brito executed such documents weekly in connection with his receipt of pay. As to that limited point, "there is nothing to suggest that Defendants would not be able to obtain for trial the necessary authenticating testimony." *Perpall*, 2017 WL 1155764, at *9. In that limited respect, the Court parts company from the Report. But on the more fundamental question of whether the timesheets may be considered on summary judgment as business records reliably reflecting Brito's actual hours worked, or reflecting as truthful that his weekly "payments include any overtime," the Court will not receive them. That is because the one party who has authenticated the timesheets for any purpose, Brito, has denied their accuracy as to this point, and because defendants have not proffered any custodian whose testimony could enable the timesheets to satisfy Rule 803(6) as to this content.

## 2. Merits of FLSA and NYLL Overtime Claims

The Court turns to the Report's recommendation to grant Brito's summary judgment motion as to liability on his FLSA and NYLL overtime claims and deny defendants' competing motion on these claims. The Court first addresses whether Brito is an hourly employee or an employee who receives a weekly salary, and then considers liability on the overtime claims.

16

<em>a.     Brito's Payment Scheme</em>

At the threshold, there is a dispute as to whether Brito was an hourly employee or whether he received a weekly salary.  That distinction is important because although weekly salaries are permitted under the FLSA and NYLL, employers are still obligated to pay overtime, and weekly salaries may or may not include overtime.  *Giles v. City of New York*, 41 F. Supp. 2d 308, 316–17 (S.D.N.Y. 1999); *see Amaya v. Superior Tile & Granite Corp.*, No. 10 Civ. 4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012).

The Report assumes without deciding that Brito received a weekly salary.  *See* Report at 15.  In support of their argument that Brito is instead an hourly employee, defendants first point to Brito's paystubs and timesheets, which recite his purported straight and overtime hourly pay rates.  *See* Def. Obj. at 11–12.  As noted, the timesheets themselves are not admissible business records as to Brito's hours or his hourly pay rate.  In any event, the fact that an employer maintains records that report an hourly rate does not itself inherently establish that the employee received hourly wages, as opposed to a weekly salary.  *See Saldarriaga Saldarriaga v. IND Glatt, Inc.*, No. 17 Civ. 2904 (PKC) (SMG), 2019 WL 1332887, at *4 (E.D.N.Y. Mar. 25, 2019) (employee received a weekly salary notwithstanding paystubs reflecting hourly rates).  And no party—including the defense—has claimed that the hours listed on the paystubs (28 at each restaurant) or the timesheets (40 at each restaurant) corresponded to Brito's actual hours worked.  The pay rate reflected on these documents, insofar as it purports to be consistent with dividing Brito's automatic weekly pay of $1,000 by the stated hours worked, thus is unworthy of credit.  Nor do Brito's paystubs or timesheets ever reflect a single hour of overtime, notwithstanding the undisputed evidence, noted by the Report, that Brito at least occasionally worked overtime.  *See* Report at 15; Zim Decl., Exs. B–C, O–P (paystubs); *id.*, Exs. D–E, G-N (timesheets); *cf. De Jesus v. Empire Szechuan Noodle House Inc.*, No. 18 Civ. 1281 (JPO), 2019

17

WL 1789901, at *3 (S.D.N.Y. Apr. 24, 2019) (factual dispute over hourly versus weekly salary payment scheme precluded summary judgment where plaintiff's payments "varied week-to-week and provid[ed] separate line items for 40-hour workweek and overtime pay").

Defendants' second argument is that Brito's weekly wage increased to $1,040 when the minimum wage increased, which they contend implies that his wage rate corresponded to the minimum wage. *See* Def. Obj. at 14. But this merely evidences that Brito's compensation was increased when the minimum wage rose, not that his pay was based on an hourly rate. And it is undisputed that Brito's weekly pay remained an inflexible automatic sum after it was increased to $1,040 per week. *See Saldarriaga Saldarriaga*, 2019 WL 1332887, at *3 n.6 (finding that, despite defendants' arguments that a plaintiff was paid an hourly wage, the plaintiff received a weekly salary where it was "undisputed that Plaintiff received equal sums each week, regardless of the hours Plaintiff worked, except when Plaintiff received periodic pay increases.").

Defendants' final argument is that Dishi testified that Sammy Cabrera, the manager, was required to seek Dishi's approval to pay any employee more than minimum wage and that Sammy Cabrera never did so for Brito. *See* Def. Obj. at 14. Therefore, defendants argue, it is reasonable to infer that Brito was paid minimum wage on an hourly basis. This inference is not reasonable in light of—indeed, it is refuted by—Dishi's testimony that Brito was "working for [the restaurants] as a weekly salary. . . . Not hourly, not timingly [sic], nothing to do with this." Dishi Tr. at 38; *see also id.* at 46.

Accordingly, a reasonable jury could not conclude that Brito was an hourly employee. His inflexible weekly pay rate compellingly establishes that he was paid a weekly salary. The Court thus adopts the Report's recommendation so finding.

#### b.   *Liability for Unpaid Overtime Payments*

Having found that Brito receives a weekly salary, the Court turns to the dispute as to whether Brito's salary included all overtime hours worked.  Defendants contend that even if Brito's payment scheme were deemed a weekly salary, his compensation would still comply with FLSA and NYLL because it includes all overtime payments.  *See* Def. Obj. at 14–15.

Employees bear the initial burden of establishing that they were not fully compensated under the FLSA.[4]  *See Garcia v. JonJon Deli Grocery Corp.*, No. 13 Civ. 8835 (AT), 2015 WL 4940107, at *4 (S.D.N.Y. Aug. 11, 2015).  Then, the burden typically shifts to an employer to come forward with evidence "negating either the reasonableness of Plaintiff's claims regarding the number of hours worked or the presumption that Plaintiff's salary did not include a premium for overtime hours."  *Id.*  But where, as here, the employer has not kept the required records regarding an employee's hours and wages, the employee may satisfy this burden with testimony of his own recollection of how many hours he worked.  *See id.*  Brito has met this lesser burden. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) ("Consistent with *Anderson*, an employee's burden in this regard is not high."); *see also Anderson*, 328 U.S. at 687 ("The remedial nature of [the FLSA] and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee.").  Thus, here the burden shifts to defendants.[5]

---

[4] Although traditionally applied to disputes over the number of hours an employee worked or the employee's rate, the burden shifting framework set out in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), has been applied to cases where the parties dispute whether an employee's salary includes overtime.  *See Garcia*, 2015 WL 4940107, at *4.

[5] New York law "places a more demanding burden on employers than the FLSA."  *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 380 (E.D.N.Y. 2012) (employer must prove by preponderance of the evidence that plaintiff was appropriately paid for hours worked). If an employer is unable to meet the FLSA burden, the employer necessarily fails to meet the

"[A]n employer asserting that an employee's weekly salary includes FLSA-required overtime payments must prove not just that the employee regularly works over 40 hours per week, but also that the employer and employee contracted for the weekly salary to include the overtime period." *Giles*, 41 F. Supp. 2d at 317.  There is a rebuttable presumption that a weekly salary covers 40 hours, but an employer may "rebut the presumption by showing an employer-employee agreement that the salary cover a different number of hours." *Id.*  NYLL claims are subject to a similar standard.  *See De Jesus*, 2019 WL 1789901, at *2.

"While the lack of an employment contract certainly does not help Defendants' argument, it may not be fatal either." *Berrios*, 849 F. Supp. 2d at 385.  "In the absence of any written instrument memorializing the parties' intentions, the Court must infer the terms of their agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record." *Moon v. Kwon*, 248 F. Supp. 2d 201, 206 (S.D.N.Y. 2002).  The course of conduct must establish that "*both* parties understood what the agreement was." *Saldarriaga Saldarriaga*, 2019 WL 1332887, at *4 (emphasis in original).  That an employee regularly works more than 40 hours a week cannot, on its own, demonstrate that the salary was intended to include overtime.  *See Giles*, 41 F. Supp. 2d at 316–17.

Here, it is undisputed that there is no formal employment contract memorializing the parties' intentions.  Accordingly, defendants must adduce sufficient evidence to create a genuine dispute of material fact as to whether the parties' course of conduct and documentary evidence establish that Brito understood the salary to include overtime.

---

NYLL burden.  *See Jiao v. Shi Ya Chen*, No. 03 Civ. 165 (DF), 2007 WL 4944767, at *3 (S.D.N.Y. Mar. 30, 2007).  Accordingly, the Court addresses both statutes together.

Defendants have not met this burden.  Defendants offer two pieces of evidence in support of their argument.  First, they point to the timesheets, signed by Brito, that include the statement "payment includes any overtime."  *See* Zim Decl., Exs. D–E, G–N.  The Court, with the Report, has held the timesheets inadmissible for this purpose.  But even if not, the outcome would be the same.  As Brito notes, although each time sheet recites an overtime *rate*, each timesheet lists zero overtime *hours* for Brito, despite the uniform testimony that Brito worked some overtime.  *See id.*  They consistently reflect (inaccurately) that Brito worked 40 hours at minimum wage at each restaurant, for a total of 80 hours of work at the straight minimum wage rate.  Even drawing all reasonable inferences in favor of defendants, no reasonable juror could find that the timesheets evidence Brito's *subjective* understanding that his salary was intended to include overtime hours that were not recorded on the timesheets.

Defendants next point to Brito's testimony that the restaurants "did not pay [him] by the hour because [he] would stay longer."  Brito Tr. at 44.  But that testimony was in connection with questioning about whether Brito understood himself to be paid the minimum wage of $12.50 an hour and later $13 an hour.  *See id.* at 43–44.  This testimony is ambiguous.  Even construing it in the light most favorable to defendants and assuming Brito was referring to overtime hours, it does not indicate that Brito believed his salary to have included any hours over 40 per week, such that he was not entitled to receive additional compensation for overtime hours.

For the reasons convincingly recited in the Report, Brito is entitled to summary judgment as to liability for the overtime claims.  The Court therefore adopts the Report's recommendation to grant Brito's partial motion as to liability only and deny defendants' motion as to the same.  Dishi, Lucky Seven, and Mofongo are held joint and severally liable to Brito for overtime pay to

the extent that they failed to pay Brito the proper overtime wages, an amount to be determined at a damages trial.

### D.     Liability for Spread of Hours Claim Under NYLL

Defendants seek summary judgment on Brito's spread of hours claim, which alleges that defendants failed to pay Brito spread of hours premiums for days that he worked more than 10 hours, in violation of the NYLL.  *See* Def. Mem. at 8–10.  Brito also moved for summary judgment on this claim, only as to liability.  *See* Dkt. 49 ("Pl. Mem.") at 1.  The Report, having identified material disputes as to how often Brito worked shifts that would require spread of hours pay and whether Brito's pay included spread of hours pay, recommended that both motions be denied as to this claim.  Defendants object to the Report's recommendation that defendants' motion for summary judgment be denied.  *See* Def. Obj. at 19–20.  Defendants' Objections merely restate their arguments that were before Judge Parker in their opening brief for summary judgment.  *See* Def. Mem. at 8–10.  Accordingly, review for clear error would be appropriate.  *See Dickerson*, 2013 WL 3199094, at *1.

Under both clear error and *de novo* standards of review, the Court finds, with the Report, that there are genuine issues of disputed material fact that preclude a grant of summary judgment in favor of either Brito or defendants.

Under the NYLL, employers are required to pay an employee a premium of an extra hour's pay at the NYLL minimum wage rate for each day the employee's spread of hours exceeds 10 hours.  *See* 12 N.Y.C.R.R. § 146–1.6(a).  Spread of hours "is defined as 'the length of the interval between the beginning and end of an employee's workday . . . includ[ing] working time plus time off for meals plus intervals off duty.'"  *Inclan*, 95 F. Supp. 3d at 502 (quoting 12 N.Y.C.R.R. § 146-1.6).  Employers must pay all restaurant employees spread of hours premiums regardless of regular rate of pay.  *See* 12 N.Y.C.R.R. § 146–1.6(d).

In the Complaint, Brito represents that he worked "approximately" 59.5 hours per week, working a "regular" six-day schedule during the relevant period (one 11.5-hour day, three 10-hour days, a 12-hour day, and a nine-hour day).  Compl. ¶¶ 26–28.  Defendants argue that, based on 59.5 hours per week, which included two shifts per week that exceeded 10 hours, at a minimum wage rate, Brito necessarily received his spread of hours premium because his wages owed never exceeded the $1,000 he was paid.  *See* Def. Obj. at 20.  But this argument makes two assumptions: (1) that Brito was paid hourly at the minimum wage rate; and (2) that Brito's schedule was the same each week.  The Court has already found as a matter of law that Brito received a weekly salary.  And Brito's schedule is disputed.  He testified that he sometimes worked more than 59.5 hours per week.  *See* Brito Tr. at 32–33.  Contrary to defendants' suggestion, that is not necessarily inconsistent with his Complaint.  Brito may have had a regular, standing schedule, on top of which he worked additional hours.  These disputes of material fact require the Court, consistent with the Report's recommendations, to deny both motions at to this claim.

### E.       Statutory Damages under the WTPA

Defendants also move for summary judgment on Brito's claim for statutory damages for violations of the wage statement provisions of the WTPA.  *See* Def. Mem. at 10–12.  Defendants object to the Report's recommendation that the Court grant Brito's partial summary judgment motion and deny defendants' summary judgment motion on Brito's WTPA claim on the ground that the Report misapplies the applicable law.  *See* Def. Obj. at 21–22.  The Court reviews this portion of the Report *de novo*.

The WTPA requires that employers provide each employee with a statement along with every wage payment that meets the requirements of NYLL § 195(3).  For a non-exempt employee like Brito, the WTPA requires, *inter alia*, that the wage statement include "the number

of regular hours worked, and the number of overtime hours worked."  *Id.*  An employer who fails

to provide a compliant wage statement may be liable for statutory damages as set forth in NYLL

§ 198.

Although defendants' provided Brito with wage statements, it is undisputed that these

wage statements did not recite the actual number of regular or overtime hours Brito worked.  *See*

Pl. 56.1 ¶ 55; Def. Counter 56.1 ¶ 55 (admitting that the paystubs that Brito received did not

reflect the hours he actually worked).  Each paystub inaccurately represented that Brito worked

exactly 28 regular hours and no overtime hours in each pay period per restaurant.  *See, e.g.*, Zim

Decl., Ex. O.  And each timesheet inaccurately represented that Brito worked exactly 40 regular

hours and no overtime hours in each pay period per restaurant.  *See* Zim Decl., Exs. D–E, G–N.

Defendants first argue that, in most cases holding employers liable for violations of

NYLL § 195(3), employers failed to provide the employee with any wage statement at all.  *See,*

*e.g.*, *Severino v. 436 W. L.L.C.*, No. 13 Civ. 3096 (VSB), 2015 WL 12559893, at *9 (S.D.N.Y.

Mar. 19, 2015).  Although such may be the prototypical WTPA wage statement case, as Brito

and the Report note, "employers may also be held liable for furnishing wage statements that fail

to comply with all of the WTPA's enumerated requirements."  *Id.*

Defendants argue that the wage statements they provided to Brito substantially complied

with the requirements of NYLL § 195(3), despite inaccurately reporting Brito's hours on each

wage statement.  They point to *Chocolatl v. Rendezvous Cafe, Inc.*, No. 18 Civ. 3372 (CBA)

(VMS), 2019 WL 5694104 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*,

2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020), in which the magistrate judge opined in a footnote

that "[i]t *may be* that an employer could raise a substantial-compliance argument such that the

alleged errors in the contents of the wage-statements furnished to Plaintiff need not lead to an

automatic wage-statement violation," *id.* at *12 n.16 (emphasis added).  But *Chocolatl* did not have cause to consider whether and under what circumstances such a defense might be available. *Id.*  And it is difficult to see how a wage statement for an hourly employee, as defendants insist Brito is, *see* Def. Obj. at 13–14, that reflects incorrect numbers of both regular and overtime hours worked could possibly substantially comply with the WTPA.  Quite to the contrary, courts have held employers liable for wage statements with missing or incorrect information, including incorrect hours worked.  *See, e.g.*, *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 413 (E.D.N.Y. 2017) (employer liable where wages statements did not accurately reflect hours worked or pay rates); *Remache v. Mac Hudson Grp.*, No. 14 Civ. 3118 (AMD) (RML), 2018 WL 4573072, at *18 (E.D.N.Y. Sept. 7, 2018) (employer liable where some wage statements "contained no overtime hours when overtime hours were worked, while others contained only a portion of the overtime hours actually worked"), *report and recommendation adopted*, 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018).

Defendants argue that *Rojas* is factually distinguishable because there, the wage statements contained incorrect hours and rates, and the plaintiffs were paid *based on* those incorrect hours and rates.  *See* Def. Obj. at 22.  Here, they argue, the wage statements substantially comply because although they are incorrect as to hours, but they are not incorrect as to Brito's pay.  *See id.*  That argument does not defeat Brito's claim.  It is undisputed that Brito's wage statements were incorrect insofar as they stated, falsely as to all weeks in which he had worked overtime, that he had not done so.  That false statement was material, because, absent an understanding between employer and employee that Brito's weekly salary included overtime hours, of which there was none here, Brito was entitled to overtime pay for such hours.  Had the statements accurately reported his hours, such would have assisted him in pursuing the overtime

25

pay denied him, as he does here.  And of course, the wage statements are inaccurate more generally in falsely portraying Brito's pay as the product of an hourly, rather than a weekly, wage rate.

Courts in this District have held that the WTPA's purpose, based on its text and history, is to ensure that the employer provides the employee with accurate information.  *See Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015); *Pierre v. Hajar, Inc.*, No. 15 Civ. 2772 (ENV) (RLM), 2018 WL 2393158, at *6 (E.D.N.Y. Mar. 28, 2018).  It is intended to do more than merely "provide notice to employees of the basis of their compensation," for which even an incorrect number of hours may suffice.  *Copper*, 132 F. Supp. 3d at 468.  "The legislators were concerned that '[m]any employees are also not all receiving the appropriate amount of overtime compensation and many employers are failing to adequately inform their employees of their wages and how they are calculated in a language they can comprehend.'"  *Id.* (quoting N.Y. Sponsors. Memo., 2010 S.B. 8380, 233rd Leg., 2010 Reg. Sess. (Oct. 28, 2010)).

Here, as the Report rightly notes, neither the paystubs nor the timesheets contained the accurate number of hours Brito worked.  Brito was entitled to accurate wage statements as to that important data point.  Accordingly, the Court adopts this section of the Report.  Brito's partial motion for summary judgment is granted as to liability for statutory damages in an amount to be determined after a trial on damages.  Dishi, Lucky Seven, and Mofongo are joint and severally liable.  The Court denies defendants' motion for summary judgment as to the WTPA claim.

### F.    Additional Remedies

Both parties have moved for summary judgment as to additional remedies, *i.e.*, liquidated damages, prejudgment interest, and attorney's fees.  The Report concludes that Brito was entitled to summary judgment on liability for all three remedies.  *See* Report at 19–21.  Defendants object to the Report's recommendation as to each.  *See* Def. Obj. at 22–23.  Defendants' objections

merely restate the arguments they put before Judge Parker in opposing Brito's motion for summary judgment.  *See* Def. Opp'n at 12.  Accordingly, review for clear error is appropriate. Under this standard, the Court adopts the Report's recommendations as to all remedies, for the reasons stated therein, save as to liquidated damages and an aspect of prejudgment interest.

### 1.    Liquidated Damages

If an employer violates the minimum-compensation provisions of the FLSA and NYLL, it is liable for both past-due wages and an equal amount in liquidated damages.  *See* 29 U.S.C. § 216(b).  The Court has discretion to deny liquidated damages, however, if the employer acted in subjective "good faith" with "objectively 'reasonable grounds'" for believing his or her acts did not violate the FLSA.  *See Garcia v. Saigon Mkt. LLC*, No. 15 Civ. 09433 (VSB), 2019 WL 4640260, at *11 (S.D.N.Y. Sept. 24, 2019) (quoting *Barfield*, 537 F.3d at 150).  At the summary judgment stage, courts have been reluctant to rule on a party's good-faith defense without also resolving at summary judgment whether the defendant has violated the FLSA.  *See, e.g.*, *Murray v. City of New York*, 16 Civ. 08072 (PKC), 2020 WL 615053, at *16 (S.D.N.Y. Feb. 10, 2020) ("Plaintiff's summary judgment motion is denied as to their claimed FLSA violations, and it is therefore premature to reach the question of whether any hypothetical violation occurred in good faith and was grounded in the City's reasonable belief that it had complied with the law."); *Perry v. City of New York*, No. 13 Civ. 1015 (VSB), 2018 WL 1474401, at *8 (S.D.N.Y. Mar. 26, 2018) ("[A]t this stage, when there are disputed issues of fact with respect to liability, I find that there are likewise disputed issues of fact rendering any finding as to liquidated damages or willful infringement premature."); *Inclan*, 95 F. Supp. 3d at 503 ("Courts in this Circuit have generally left the question of willfulness to the trier of fact." (quotations and citation omitted)).

Here, the Report based its recommendation that liquidated damages be awarded solely on Brito's spread of hours claim, noting that defendants have not challenged Brito's assertion that

they willfully violated NYLL's spread of hours provisions.  *See* Report at 20.  However, because the Court—consistent with the Report—has found disputed issues of fact to preclude entry of judgment as to liability on the spread of hours claim, it is necessarily premature to determine that there was a willful violation of law in connection with those claims, *i.e.*, that defendants, in failing to furnish Brito spread of hours pay as required, lacked a good-faith defense.  Accordingly, the Court denies the parties' cross-motions for summary judgment as to liquidated damages on Brito's spread of hours claim.  Brito's bid for such relief remains open.

### 2.    Prejudgment Interest

Under the FLSA, prejudgment interest may not be awarded in addition to liquidated damages.  *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015).  The NYLL, however, does permit simultaneous awards of liquidated damages and prejudgment interest as damages for unpaid overtime and spread of hours premiums.  *See id.*

The Report, having granted summary judgment to Brito as to liability for unpaid overtime and for liquidated damages on the spread of hours claim, granted Brito summary judgment as to liability for prejudgment interest under the NYLL on the underpaid overtime wages and unpaid spread of hours wages.  *See* Report at 21.  As to the unpaid overtime claims, the Court, having granted summary judgment to Brito as to liability, adopts the Report's recommendation to hold Dishi, Lucky Seven, and Mofongo joint and severally liable under the NYLL for prejudgment interest on the unpaid overtime, an amount to be determined after a damages trial.  If Brito is ultimately found entitled to federal liquidated damages on any of his overtime claims, this award will be limited to prejudgment interest as to any unpaid wages for which federal liquidated damages have not also been awarded.  *See Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *10 (S.D.N.Y. May 14, 2012).

However, liability on the spread of hours claim remains unresolved, and therefore the Court has denied Brito's motion for summary judgment as to liquidated damages on the spread of hours claim.  Accordingly, the Court must deny, as premature, both motions for summary judgment as to prejudgment interest under the NYLL on the spread of hours claim.

### 3.     Attorneys' Fees

A plaintiff who successfully brings claims pursuant to the FLSA and NYLL is entitled to recover reasonable attorneys' fees and costs under both statutes.  *See* 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663(1); *see also Feng Chen v. Patel*, No. 16 Civ. 1130 (AT) (SDA), 2019 WL 2763836, at *14 (S.D.N.Y. July 2, 2019); *see also Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012).

The Court has granted Brito's partial motion for summary judgment as to liability for the unpaid overtime claims under the FLSA and NYLL and for the WTPA claim.  Accordingly, the Court holds Dishi, Lucky Seven, and Mofongo jointly and severally liable for reasonable attorneys' fees and costs in an amount to be determined after a trial on damages.

### CONCLUSION

For the foregoing reasons, the Court adopts the Report in principal part, while departing from it in two narrow particulars.

The Court adopts the Report in: (1) granting Brito's motion for summary judgment as to whether Dishi was Brito's employer within the meaning of FLSA and NYLL; (2) denying Brito's motion for summary judgment as to whether Cabrera was Brito's employer within the meaning of the FLSA and NYLL; (3) granting Brito's motion for summary judgment as to whether Lucky Seven and Mofongo were his joint employers; (4) granting Brito's partial motion and denying defendants' motion as to defendants' liability on Brito's unpaid overtime claims under the FLSA and NYLL; (5) denying both Brito's and defendants' motions for summary

judgment as to liability on Brito's spread of hours claim under the NYLL; (6) granting Brito's motion and denying defendants' motion as to liability for statutory damages under the WTPA; (7) granting Brito's partial motion and denying defendants' motion as to liability for prejudgment interest under the NYLL for the unpaid overtime claims; and (8) granting Brito's partial motion and denying defendants' motion for summary judgment as to liability for attorney's fees.

The Court departs from the Report only in that the Court denies, as premature, Brito's motions for summary judgment as to liability for (1) liquidated damages on the spread of hours claim; and (2) prejudgment interest on the spread of hours claim.


SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated: March 24, 2021
       New York, New York